## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TOP JET ENTERPRISES, LTD., | ) | |
| | ) | |
| Plaintiff / Judgment-Creditor, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| DAVID KULOWIEC, | ) | Related Case: 1:21-MC-00497-RA-KHP |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THE SUBPOENA AND FOR SANCTIONS

PILLSBURY WINTHROP SHAW
PITTMAN LLP

Geoffrey Sant
Ed Flanders
Carol Lee
Michelle Ng
31 W. 52nd Street
New York, New York 10019-6131
Telephone.: 212-858-1000
Facsimile: 212-858-1500

Hugh M. Ray, III
Two Houston Center
909 Fannin Suite 2000
Houston, TX 77010
Telephone: 713-276-7600
Facsimile: 713-276-7673

Counsel for Plaintiff Top Jet Enterprises, Ltd.

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION.................................................................................................. 1

II. BACKGROUND ................................................................................................. 4

    A. Nature of This Case.................................................................................. 4

    B. The Subpoena .......................................................................................... 5

    C. Kulowiec Helps Conceal Ohadi and Woolley's Ownership................................. 6

    D. Kulowiec Refuses to Produce Documents ......................................................... 8

    E. The August 11 Hearing ......................................................................... 10

    F. Kulowiec's August 26, 2021 Supplemental Production.................................... 12

    G. The September 8 Production.................................................................. 13

    H. The September 9, 2021 Hearing............................................................. 13

    I. Revelation of Additional 63,030 Documents ...................................................... 14

    J. Kulowiec's Deposition........................................................................... 15

    K. Kulowiec Withholds 38,774 Responsive Documents...................................... 16

III. ARGUMENT..................................................................................................... 18

    A. Legal Standard...................................................................................... 18

    B. The Court Should Compel Compliance with Subpoena................................. 19

        1. Kulowiec's Undue Burden Objection Is Untimely ................................ 19

        2. Cost-Shifting Is Not Appropriate in Post-Judgment Discovery ................. 20

        3. Kulowiec's Refusal to Turn Over Documents Is Unjustifiable................. 24

    C. The Documents Should Be Produced Under the Crime-Fraud Exception........... 24

    D. Kulowiec Should Pay Top Jet's Reasonable Attorney's Fees............................ 25

IV. CONCLUSION.................................................................................................. 26

TABLE OF AUTHORITIES

**Page(s)**

Cases

*Amusement Indus., Inc. v. Stern*,
    293 F.R.D. 420 (S.D.N.Y. 2013) ....................................................................................... 25

*AP Links, LLC v. Russ*,
    299 F.R.D. 7 (E.D.N.Y. 2014).............................................................................................. 23

*In re Chevron Corp.*,
    749 F.Supp.2d 170 (S.D.N.Y. 2010)............................................................................21, 22

*Colton v. United States*,
    306 F.2d 633, 639 (2d Cir. 1962)....................................................................................... 21

*In re Corso*,
    328 B.R. 375 (E.D.N.Y. 2005) ........................................................................................... 19

*In re DG Acquisition Corp.*,
    151 F.3d 75, 81 (2d Cir. 1998) ........................................................................................... 19

*Drimmer v. Appleton*,
    628 F. Supp. 1249 (S.D.N.Y. 1986).................................................................................... 21

*Exxon Mobil Corp. v. Schneiderman*,
    316 F.Supp.3d 679 (S.D.N.Y. 2018)................................................................................... 20

*In re First American Corp.*,
    184 F.R.D. 234 (S.D.N.Y.1998)......................................................................................... 18

*First American Corp. v. Price Waterhouse LLP*,
    988 F.Supp. 353 (S.D.N.Y. 1997)....................................................................................... 19

*Fleisher v. Phoenix Life Ins. Co.*,
    11 CIV. 8405 CM JCF, 2013 WL 42374 (S.D.N.Y. Jan. 3, 2013)..................................... 22

*Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*,
    6:12-cv-00023, 2013 WL 3660268 (W.D. Va. June 6, 2013) ............................................ 19

*In re Honeywell Int'l, Inc. Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ........................................................................................ 23

*Kennedy v. Basil*,
    18-CV-2501(ALC)(KNF), 2019 WL 2343153 (S.D.N.Y. June 3, 2019)............................ 22

*MTB Bank v. Fed. Armored Exp., Inc.*,
  93 CIV. 5594 (LBS), 1998 WL 43125 (S.D.N.Y. Feb. 2, 1998)......................... 18

*Nike, Inc. v. Wu*,
  13 CIV. 8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020), *aff'd sub
  nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021)................... 23

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
  04 CIV. 2271 (RWS), 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006)................. 22

*PaineWebber, Inc. v. Acstar Ins. Co.*,
  211 F.R.D. 247 (S.D.N.Y. 2002) ................................................................... 18

*Pearlstein v. BlackBerry Limited*,
  13CV07060CMKHP, 2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019)................. 24

*Ratliff v. David Polk & Wardwell*,
  354 F.3d 165 (2d Cir. 2003) ........................................................................... 21

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
  205 F.R.D. 421 (S.D.N.Y. 2002) ................................................................... 21

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
  14CIV2590VMJCF, 2017 WL 11628084 (S.D.N.Y. June 28, 2017)................. 22

*In re Smith*,
  14-21261 (JJT), 2017 WL 1190590 (Bankr. D. Conn. Mar. 29, 2017)............. 25

*In re Subpoena to Loeb & Loeb LLP*,
  19-Misc. Civ. 241 (PAE), 2019 WL 2428704 (S.D.N.Y. June 11, 2019)........... 23

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987)............................................................................. 21

*In re Woolworth Corp. Secs. Class Action Litig.*,
  166 F.R.D. 311 (S.D.N.Y. 1996) ................................................................... 19

*In re World Trade Ctr. Disaster Site Litig.*,
  21 MC 100 AKH, 2010 WL 3582921 (S.D.N.Y. Sept. 14, 2010)................18, 22

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure

Rule 26(f)....................................................................................................................15, 24

Rule 34.................................................................................................................18, 19, 20

Rule 37........................................................................................................................18, 25

Rule 37.2.............................................................................................................................9

Rule 45...................................................................................................................1, 18, 19

Rule 45(a)(1)(A)(iii) ........................................................................................................ 18

Rule 45(d)(2)(B).............................................................................................................. 21

## I.  __INTRODUCTION__

Pursuant to Federal Rule of Civil Procedure 45 and this Court's September 9, 2021 and October 18, 2021 Orders in Case No. 1:21-MC-00497-RA-KHP ("Related Action"), Plaintiff Top Jet Enterprises, Ltd. ("Top Jet") respectfully submits this memorandum of law in support of its motion to compel production of documents from David Kulowiec ("Kulowiec") and for sanctions. Regarding Kulowiec's failure to comply with Top Jet's subpoena, Judge Parker has stated: "I'm very concerned about this process, I'm very concerned about what Mr. Kulowiec has produced, and I'm very concerned about the manner in which the search has been done." *See* Ex. 1[1] at 24:16-20. Judge Parker granted leave to initiate this action and file a motion to compel and for sanctions.

On Jan. 25, 2021, Top Jet obtained a final and non-appealable judgment of over $90 million against Skyblueocean Ltd. ("Sky"), and Jet Midwest Group, LLC ("JMG"), an owner of Sky. *See Top Jet Enterprises, Ltd. v. Sino Jet Holding Ltd. et al.*, W.D. Mo. Case No. 20-cv-00532-W-FJG ("Confirmation Case" in the "Missouri Court"), Dkt. Nos. 49 at 12 and 50. On Feb. 10, the Missouri Court lifted the 30-day automatic stay of collection, finding "a serious risk" that JMG and Sky's "assets will be dissipated." *See* Confirmation Case, Dkt. No. 58 at 4. The court based this finding on the many frauds (discussed below) committed by JMG and Sky against creditors and various federal courts. *Id*. Both Sky and JMG are Kulowiec's clients. Top Jet subpoenaed Kulowiec on April 29, 2021 ("Subpoena") seeking information about Sky's owners. *See* Ex. 15.

JMG and two of its owners—F. Paul Ohadi ("Ohadi") and Kenneth Woolley ("Woolley")—were found liable for $41 million in fraudulent transfers. *See Jet Midwest International Co., Ltd. v. Jet Midwest Group, LLC et al.*, W.D. Mo. Case No. 18-cv-6019-FJG ("Fraudulent Transfer Action"), Dkt. 699 ("Aug. 6 Order"). JMG misrepresented Ohadi and

---

[1] Citations to "Ex.__" refer to exhibits to the Declaration of Michelle Ng, dated Oct. 22, 2021, in support of this Motion.

Woolley as third-party creditors (instead of owners), and funneled JMG's money to Ohadi and Woolley as fake debt payments. *See id.*, Findings of Fact ("FOF") ¶¶ 58-63. As the Missouri Court explained, JMG and its owners "lied about JMG's ownership, concealed assets, and concealed documents." *See* Fraudulent Transfer Action, Dkt. No. 761 ("March 30 Order") at 10-11.

Kulowiec assisted JMG's fraud by failing to produce (in response to a prior subpoena) documents he possessed showing Ohadi and Woolley own JMG. Kulowiec now fails to produce (in response to the Subpoena) documents he possesses showing Ohadi and Woolley own Sky.

In 2018, JMG defrauded a bankruptcy court by concealing assets and denying that Ohadi and Woolley own JMG. Aug. 6 Order, FOF ¶¶ 58-63, 425-436. Despite knowing of JMG's fraud, Kulowiec sought to become its bankruptcy counsel. Kulowiec never informed the court, creditors, or the U.S. Trustee of JMG's fraud.  Instead, he privately emailed JMG about its fraud, asking "what would happen to the [Ohadi T]rust priority in the JMG assets *if it admits it holds a 20 percent interest in JMG*." Ex. 2 at 92:6-94:25 (emphasis added). Kulowiec told JMG the "only reason" to deny Ohadi owned JMG was to protect "JMG assets." *See* Aug. 6 Order at ¶62; Ex. 3.

During JMG's 2018 bankruptcy fraud, Kulowiec flouted a subpoena by failing to produce documents showing Ohadi and Woolley own JMG. *See* Ex. 4 at 98:21-113:15. The documents Kulowiec possessed but didn't produce include (among others) a JMG email acknowledging "F. Paul Ohadi Trust and Kenneth M. Woolley being members holding 10% interest in Jet Midwest Group, LLC"; an email from JMG to Ohadi and Woolley stating, "We are blessed to have you two as partners in Jet Midwest [Group]"; an org chart, sent by Ohadi and Woolley's personal attorney, listing both as 10% owners of JMG; and an email from Ohadi and Woolley's attorney seeking "to discuss the Ohadi loan and his ownership in J[et]M[id]W[est Group]." *See* Exs. 5, 6, 8, 20.

Kulowiec also failed to produce these documents in the Fraudulent Transfer Action. Ohadi

and Woolley's litigation attorneys stated that the plaintiffs' "claims rise and fall on whether they can show" that Ohadi and Woolley own JMG.  *See* Ex. 9 at 13:3-9. By withholding critical evidence, Kulowiec advantaged his clients, while causing multiyear delays and millions in legal fees to his clients' judgment-creditors.

Top Jet's Subpoena seeks information about Sky's owners. Sky now denies that Ohadi and Woolley own Sky, just as JMG falsely denied Ohadi and Woolley own JMG. For six months, Kulowiec has refused to review documents while claiming he produced everything. His delay seems tactical. It buys time while JMG's owners (Ohadi and Woolley) appeal the Fraudulent Transfer Action, arguing there is insufficient evidence that they own JMG. *See Jet Midwest International Co., Ltd. v. F. Paul Ohadi, et al*, Eighth Circuit Court of Appeals Case No. 20-2285 ("Ohadi/Woolley Appeal"), Ohadi/Woolley Appellants' Opening Brief at 43. Many documents about Sky's ownership (*e.g.*, org charts) also state that Ohadi and Woolley own JMG.

Twice, Judge Parker ordered Kulowiec's counsel (Mr. Schnitzer) to review and produce documents. Twice, Kulowiec defied these orders and misled the Court about compliance.

On Aug. 11, 2021, this Court ordered Mr. Schnitzer to do a "search" and then make "an affirmative representation" that "there are no more documents that are responsive." *See* Ex. 10 at 34:11-15. At the next hearing, Mr. Schnitzer falsely made this "affirmative representation." But Kulowiec had not yet even given Mr. Schnitzer access to Kulowiec's documents. *See* Ex. 4 at 90:6-8. Mr. Schnitzer had not done a search because it was impossible for him to do a search. Kulowiec thus defied Judge Parker's order and then misled the Court.  *See* Ex. 1 at 24:16-20.

On Sept. 9, Judge Parker again ordered Mr. Schnitzer to produce documents in advance of Kulowiec's deposition, so Top Jet could explore whether documents "responsive to the subpoena [] were not produced." *See* Ex. 1 at 16:24-17:2; 27:24-28:8. Mr. Schnitzer never reviewed the

documents. He refused to review the thousands of potentially relevant documents hitting on Top Jet's search terms unless Top Jet paid him half a million dollars . *See* Related Action, Dkt. No. 37 at 3; Dkt. No. 37-4 at 7; *see also* Ex. 11 at 4, 6.

Kulowiec testified that the only thing he did after receiving the Subpoena was to look through emails that contained the keyword "Skyblueocean." *See* Ex. 4 at 39:2-11. But Kulowiec must know his client was often called "Sky," "SBO" and other names. Kulowiec did nothing else. He never searched his phone, physical folders, texts, voicemail, or "Sky" computer folder (and nobody at his firm searched either). *Id.* at 24:24-25, 35:16-20, 37:7-10, 56:9-25, 59:11-22, 67:19-21, 72:8-10, 79:4-5; *see also* Related Action, Dkt. No. 37 at 1-2. Kulowiec admitted that, in 2018, he failed to produce documents showing "Ohadi and Woolley are owners" of JMG: "Yes, I guess maybe – probably I should have [produced these documents], yes." *See* Ex. 4 at 98:21-113:15.

While claiming a document review is too costly, Kulowiec and Sky fight the Subpoena across half a year of hearings, a deposition, and in over 200 pages of letters and submissions between the parties and to the Court. Kulowiec, one of three name partners at his firm, surely know what he is doing. Ex. 4 at 12:5-12, 77:21-78:4. He appears to be running interference for his clients.

For the reasons set forth herein, and in the supporting declarations of Michelle Ng and Rachelle Rennagel ("Rennagel Dec."), Top Jet respectfully asks the Court to order production of all 38,774 emails identified using Top Jet's search terms and to impose sanctions for Kulowiec's noncompliance with the Subpoena.  Top Jet respectfully suggests that an appropriate sanction would be Top Jet's legal fees in litigating this Subpoena.

## II.   **BACKGROUND**

### A.   **Nature of This Case**

On April 5, 2017, Top Jet began an arbitration against JMG, Sky, and Sino Jet Holding, Ltd. ("Sino Jet"), before the Hong Kong International Arbitration Centre ("HKIAC"). *See* Ex. 12.

4

On June 22, 2020, the three-member HKIAC arbitral tribunal ("Tribunal") unanimously ruled in favor of Top Jet, finding "it is clear" that JMG and Sky "did not act in good faith." *Id.*, ¶ 19.15. The Tribunal granted Top Jet damages of $87 million, plus interest, against JMG, Sky, and Sino Jet, jointly and severally, as well as fees and costs of $2.2 million. *Id.* ¶¶ 25.3-25.4; Ex. 13.

On Jan. 25, 2021, in the Confirmation Case, the Missouri Court confirmed the arbitral award. *See* Confirmation Case, Dkt. Nos. 49 at 12 and 50. On Feb. 10, that court lifted the 30-day automatic stay of collection, due to the "serious risk" that "assets will be dissipated" by JMG and Sky. *See id.*, Dkt. No. 58 at 4. To date, Top Jet has collected just $4,017.42, and the judgment has grown close to $100 million. Neither Sky nor JMG voluntarily pay anything. On June 25, 2021, Top Jet registered the judgment in the Related Action. *See* Related Action, Dkt. Nos. 1-3.

**B.    The Subpoena**

On April 29, 2021, as part of its collection efforts, Top Jet served the Subpoena on JMG's and Sky's corporate counsel, Kulowiec. *See* Ex. 15. Top Jet needs Sky's ownership information to explore veil-piercing and other collection mechanisms because Sky claims to be insolvent. *Id.* Top Jet seeks to avoid replaying JMG's Fraudulent Transfer Action, in which JMG's ownership has been litigated for over three years, due to Kulowiec's failure to produce responsive documents.

The Subpoena attached two emails from Kulowiec to Brad Helsten ("Helsten"), Ohadi and Woolley's personal lawyer. These emails, obtained in the Fraudulent Transfer Action, discussed "the shares [of Sky] allocated to Paul Ohadi/Ken [Woolley]" and attached an org chart showing Ohadi owns 20% of Sky and that Woolley invested $10 million in Sky. Ex. 15 at 10-15.

Both Sky and Kulowiec have sought to obstruct Top Jet's investigation into Sky's ownership. Sky's efforts are discussed here; Kulowiec's efforts are described in § II(C)-(K) herein.

During the arbitration, Sky violated its discovery obligations. Ex. 12 ¶¶ 11.22-11.23. The Tribunal ordered Sky to produce documents, but Sky produced nothing. *Id.* The Tribunal found

Sky "did not act in good faith." *See id.* ¶ 19.15. Later, during enforcement proceedings in the Cayman Islands, the Grand Court of the Cayman Islands called Sky "wholly unresponsive" due to a "complete failure to respond to the enforcement proceedings." *See* Ex. 16 ¶¶ 10, 17.

On Feb. 11, 2021, Top Jet served post-judgment document demands on Sky. Sky produced nothing about its owners. Sky strung Top Jet along for months, but never produced documents. Sky promised on June 16 to "start running searches." *See* Ex. 17 at 2. On Aug. 16, Sky said it would "begin producing responsive documents on the 27th." *Id*. at 1. At meet-and-confers on Aug. 23 and Aug. 30, Sky's counsel refused to answer questions and had no information about how many documents were collected or reviewed, or when Sky would produce anything. *See* Ex. 28. Eight months after being served with a subpoena, the only thing Sky produced is excuses.

While unwilling to do a document review, Sky has sent multiple litigators to each hearing in the Related Action. Its litigation counsel sent an overlength letter to the Court on Aug. 10, urging it not to act because Sky was supposedly "in the process of reviewing [documents] for potential production." *See* Related Action, Dkt. No. 19 at 3 n.4. That was months ago.

## C.   Kulowiec Helps Conceal Ohadi and Woolley's Ownership

A federal court found that, in 2018, Kulowiec's client JMG and its owners defrauded the U.S. Bankruptcy Court in Delaware, in part by falsely denying that Ohadi and Woolley own JMG. *See* Aug. 6 Order, FOF ¶¶ 58-63. This was done so JMG could fraudulently transfer assets to its owners. *Id*.; *see also* March 30 Order at 10-11 ("JMG along with [its owners] engaged in numerous fraudulent actions and transfers."); *id*. (Their frauds included "concealment of inventory during post-judgment discovery, and concealment of inventory from the bankruptcy court.").

Kulowiec concealed JMG's fraud from the bankruptcy court even as he sought to be JMG's bankruptcy counsel. *See In re Jet Midwest Group, LLC,* Bankr. D. Del. Case No. 18-10395 (KJC), Dkt. No. 99 (JMG "selected" Kulowiec "as its special corporate counsel because of [his] extensive

knowledge of [JMG]'s business and financial affairs."). *See also* Aug. 6 Order at 14; Ex. 2 at 63:21-67:18 ("I've never told anybody Karen Kraus has lied" or informed the U.S. Trustee or the court of these lies.) In the Fraudulent Transfer Action, Kulowiec was deposed about emails he sent JMG, asking, "what would happen to the [Ohadi T]rust priority in the JMG assets *if it admits that it holds a 20 percent interest in JMG*." *See* Ex. 2 at 92:6-94:25 (emphasis added). Kulowiec refused to answer, claiming his emails about his client's frauds were privileged:

> KULOWIEC: I think that's attorney-client privilege too. . . . I don't know how you got this. I didn't send it -- I didn't send it to you. I mean it was -- everything in this e-mail is just to people that are in the Jet Midwest Group.

Ex. 2 at 92:22-93:22; *see also id*. at 85:1-94:25.

In 2018, Kulowiec was subpoenaed regarding JMG's owners. But he never produced the following key documents, either in the 2018 bankruptcy case or the Fraudulent Transfer Action:

(1) A JMG email to Woolley and Kulowiec stating: "F. Paul Ohadi Trust and Kenneth M. Woolley being members holding 10% interest in Jet Midwest Group, LLC." *See* Ex. 5.

(2) An email from Helsten (personal counsel to Ohadi and Woolley) stating: "Paul Ohadi is looking for stock certificates and membership interests asap." *See* Ex. 7.

(3) An email from JMG's CEO to Helsten, Woolley and Ohadi: "Paul [Ohadi] and Ken [Woolley]: We finally closed! . . . . We are blessed to have you two as partners in Jet Midwest [Group] and Dynamic." *See* Ex. 6.

(4) An email from Helsten asking Kulowiec to "confirm this org chart," and attaching an organizational chart showing Ohadi and Woolley each own 10% of JMG. *See* Ex. 8.

(5) A JMG email stating that because Woolley owns JMG, Woolley would send "[c]ertified [copies of his] passport, utility bill and driver license" for due diligence purposes. *See* Ex. 19.

(6) A Helsten email stating "Ken [Woolley] asked me to reach out to you . . . to discuss the

Ohadi loan and his ownership in JMW [*i.e.*, Jet Midwest Group]." *See* Ex. 26.

Because Kulowiec failed to produce these documents, they were never found or introduced in the Fraudulent Transfer Action. Each one was revealed *for the first time* in September 2021, after five months of litigating Top Jet's Subpoena. At his Sept. 27, 2021 deposition, Kulowiec admitted these documents show "Ohadi and Woolley are owners" of JMG, and should have been produced in 2018: "Yes, I guess maybe – probably I should have, yes." Ex. 4 at 98:21-113:15. But these are just the beginning—Kulowiec refuses to even review tens of thousands of other emails.

By flouting the 2018 subpoena, Kulowiec interfered with judicial proceedings in multiple states, causing years of delay and millions in fees. For example, the Missouri Court observed that "one TRO application [] was denied after defendants lied about JMG's ownership, concealed assets and concealed documents." March 30 Order at 10. Kulowiec's failure to produce evidence allowed his client to "lie[] about JMG's ownership" and "conceal[] documents."

Ohadi and Woolley looted $41 million from JMG. *See* Aug. 6 Order, FOF ¶¶ 29-63, 90, 212, 234, 337; Fraudulent Transfer Action, Dkt. No. 700, at 2. They now appeal the Fraudulent Transfer Action, arguing there is no "clear and convincing evidence" they own JMG. *See* Ohadi/Woolley Appeal, Ohadi/Woolley Appellants' Opening Brief at 43; *see also*, *e.g.*, Ex. 9 at 13:3-9 (each time arguing there isn't "any evidence" they own JMG). Meanwhile, Kulowiec withholds this very evidence.

When his client JMG defrauded courts and creditors, Kulowiec withheld key evidence about JMG's owners. Kulowiec now re-runs this same playbook on behalf of another client, Sky.

### D.    **Kulowiec Refuses to Produce Documents**

The Subpoena's return date was May 7, 2021. But on May 7, Kulowiec produced nothing. He also did not serve any objections.

On May 7, 2021, Top Jet met-and-conferred with Kulowiec and Sky's litigation counsel

(Polsinelli). Kulowiec sought and received an extension to May 21 to produce documents. *See* Related Action, Dkt. No. 4 at 1, 3. But on May 21, Kulowiec produced nothing.

On May 21, Kulowiec sought an extension to May 28 because he was "running behind on completing the review." *See* Related Action, Dkt. No. 4-3 at 5. Top Jet consented. But on May 28, Kulowiec produced nothing—and also failed to seek an extension. Finally, on June 1, Kulowiec produced 22 emails. *See* Related Action, Dkt. No. 4-4. But none of these emails deal with Ohadi and Woolley's ownership of Sky, or explain why Kulowiec—counsel to Sky for seven years— created charts and emails stating Ohadi and Woolley are Sky's owners. Kulowiec's June 1 letter contained his first (untimely) objection, which cited only privilege and work product (not burden). *See id.* Despite this (untimely) objection, Kulowiec did not produce a privilege log.

On June 2, 2021, Top Jet wrote to Kulowiec about his deficient production and missing privilege log. *See* Related Action, Dkt. No. 4-5. Kulowiec ignored the June 2 letter. On June 4, Top Jet emailed Kulowiec. Kulowiec ignored the email. On June 11, Top Jet called and left a message. Kulowiec ignored the call. On June 14, 2021, Top Jet called Kulowiec again, the fourth attempt to reach him after his June 1 letter. This time he answered. He admitted to withholding documents based on privilege, but refused to create a log. He said he would talk to Sky's litigation team and follow up with Top Jet. But Kulowiec never contacted Top Jet again. *Id.* Dkt. No. 4.

On June 29, 2021, Top Jet sought a pre-motion conference pursuant to Local Rule 37.2. *See* Related Action, Dkt. No. 4. Two days later, Mr. Schnitzer, representing Kulowiec, emailed Top Jet that he was working "with Kulowiec to put together a privilege log, and hope to have it complete by end of next week (the 9th)." Ex. 21. But Kulowiec did not produce a log on July 9.

On July 19, 2021, Top Jet inquired about the missing log. Mr. Schnitzer did not respond. Ex. 22. Over two weeks later, on Aug. 5—just days before a hearing—Mr. Schnitzer wrote the

Court, claiming Kulowiec had reviewed "thousands of emails and documents." *See* Related Action, Dkt. No. 15 at 2. Despite these words ("emails and documents"), Kulowiec later admitted he only reviewed emails. *See* Ex. 4 at 55:2-57:22. Somehow those "thousands of emails" resulted in a production of just 22 emails, none explaining how Ohadi and Woolley came to own Sky.

Despite claiming to have reviewed "thousands of emails and documents," Kulowiec's log, belatedly served in August, listed just 20 emails and eight "work product" documents. *See* Related Action, Dkt. No. 15-1. Nothing came from when Sky was created in 2015. *Id.* Kulowiec withheld as privileged such things as: (i) ECF court filing notices; (ii) a mediator's email to all parties; and (iii) an email from Kulowiec stating, in its entirety: "Hi Paul: Attached please find the organizational chart. Best regards, Dave Kulowiec." None of them was close to being privileged.

Nor does the work product doctrine apply. Kulowiec and his clients each wrote to the Court that Kulowiec is "not a litigator" and "has not and does not represent JMG or [Sky] in any litigation matters." *See* Related Action, Dkt. No. 15; Dkt. No. 19. Kulowiec used "work product" to shield factual documents, such as org charts. To hide the fact that Kulowiec waived privilege by emailing Sky's information to *JMG's* outside advisors, the log's "Legend" lumps Sky, JMG and Jet Midwest, Inc. into a single imaginary entity, which the log names "Jet Midwest Companies."

### E.    The August 11 Hearing

During the Fraudulent Transfer Action, JMG admitted its payments and debts to Kulowiec for 2017 alone exceeded half a million dollars. *See* Ex. 23 23 at JMG_TRO001616-617. At the Aug. 11, 2021 hearing, Kulowiec said he has been JMG's counsel "for a long time," "maybe ten years," and has served Sky since 2015. *See* Ex. 10 at 12:15-18. Despite this, Kulowiec claimed his 22-document production was "all there is." *Id*. at 23:25. Judge Parker rejected this as obviously unbelievable: "[T]hat certainly can't be everything that you have." *Id*. at 15:18-21.

In response to Judge Parker's questions, Kulowiec admitted to "a lot of fluidity in terms of

figuring out how to . . . complete the structure of Skyblueocean. And there was back-and-forth. And I agree there was correspondence in which we are discussing possibilities." Ex. 10 at 25:11-15. The admission he was "figuring out how to . . . complete the structure" contradicted Kulowiec's initial insistence that, "I didn't set up Skyblueocean." *Id*. at 12:6-7. Despite admitting to "a lot of fluidity," "back-and-forth," and "email correspondence" about the structure of Sky, Kulowiec has never produced nor logged any documents from 2015 about creating Sky's structure.

Judge Parker rejected Kulowiec's log as "cryptic" and as not "indicat[ing] the basis for attorney-client privilege." Ex. 10 at 30:19-25. Improperly logged items included "the structure chart that you've listed as work product"; a "transactional document; that's not privileged"; and "communications with a financial consultant, that typically is not going to be privileged." *Id*. at 26:5-15; 31:8-11; 31:23-32:3; *see also id*. at 27:9-15 ("Your client has no basis to object to that kind of information on privilege, nor do you."). Nine logged emails are with *JMG's* consultants ("financial consultant" Mark Allison and accountant E. Grigorian). Neither is Sky's employee.

The Court ordered Mr. Schnitzer to discuss with Top Jet what else "you have or don't have" and "make an affirmative representation that you've done a search and that there are no more documents that are responsive." *See* Ex. 10 at 15:18-21; 34:11-15. After this search, "[i]f there are more documents" where "you're asserting privilege, you should provide a supplement to this log." *Id*. at 34:15-17. Mr. Schnitzer falsely responded that he and Kulowiec had already searched Kulowiec's emails together: "*We* narrowed it down to the emails that were responsive and then reviewed those. . . . But, of course, I do understand your instruction, and *I will go through with Mr. Kulowiec again*, just to make sure." Ex. 10 at 35:23-36:10. In fact, Mr. Schnitzer had never seen nor searched Kulowiec's emails, nor did he do so in response to this order.

The Court ordered an open deposition, with Kulowiec needing to complete his production

in advance so Top Jet would have "the documents for purposes of the deposition." *Id*. at 27:19-22, 28:3-6; *see also id*. at 36:13-20 ("plaintiff [may] then depose Mr. Kulowiec" if "the documents [do] not tell it all."). The Court also ordered Mr. Schnitzer to review the log and produce "factual information," including otherwise privileged emails "in redacted form." Ex. 10 at 34:5-14. The Court had already determined most items on the log were not privileged. *Id*. at 26:5-15; 31:8-11; 31:23-32:3 (transactions, org charts, and emails with external advisors not privileged). Other improperly logged documents included ECF notices and emails that copied opposing counsel.

Reviewing the 28 items on the log should take about an hour. Top Jet urged a prompt production so it could prepare for Kulowiec's deposition. But Mr. Schnitzer took over two weeks, a pace of half-a-day per email on the log. He claimed he had no deadline to produce anything, and he ignored repeated requests that he affirmatively represent he had done a search. Ex. 24. He refused the court-ordered open deposition, stating: "Kulowiec does not consent." Ex. 25.

Meanwhile, because of Kulowiec's delays and missing documents, Top Jet issued a new subpoena seeking all emails to or from Ohadi, Woolley, or Helsten. None of them was Kulowiec's client, so she should be able to immediately produce all emails. But even this production, which required no privilege or responsiveness review, was delayed for weeks.

### F.    Kulowiec's August 26, 2021 Supplemental Production

On Aug. 26, Kulowiec produced some documents he had improperly logged, including a handwritten "Joint Venture Structure" chart showing Ohadi owns 20% of Sky. Ex. 26. But he never produced the basis for his emails and charts saying Ohadi and Woolley own Sky. Assertions must be based on *something*. Kulowiec still withholds emails to *JMG's* outside consultants, despite the Court's instruction that these emails are "not going to be privileged." *See* Ex. 10 at 31:8-11.

Mr. Schnitzer ignored another request for his "affirmative representation" that he had "done a search," and again refused to schedule the court-ordered deposition. *See* Ex. 25; Ex. 10 at

15:18-21; 34:11-17. He produced nothing in response to the subpoena for emails to or from Ohadi, Helsten, and Woolley by its return date of Sept. 1 (even though no document review was needed).

### G.      The September 8 Production

At 11:38 pm, the night before a Sept. 9, 2021 court hearing, Kulowiec produced four emails (and two attachments) he claimed "were just located." Ex. 27. All were responsive to both the Subpoena and the 2018 subpoena. One email, from Helsten, asks Kulowiec to "confirm this org chart and fill in the other owners and percentages." *See* Ex. 8. The org chart shows Ohadi and Woolley own both Sky (3% each) and JMG (10% each). *Id*. Kulowiec withheld this email for three years, during JMG's bankruptcy, the Fraudulent Transfer Action, and in response to the Subpoena.

### H.      The September 9, 2021 Hearing

At the Sept. 9 Hearing, the Court asked Mr. Schnitzer to affirmatively represent that he had done a search and that there were "no other documents or no documents responsive to a particular request." Ex. 1 at 12:11-16. Mr. Schnitzer stated: "[T]hat is the statement we are making now…. the search has been completed." *Id*. at 12:24-13:6. This was all false. *Kulowiec never gave Mr. Schnitzer access to his emails*. *Id*. at 18:15-19:12 (THE COURT: "Mr. Schnitzer, is that correct?" MR. SCHNITZER: "[I]it is correct..."). This was the second time in consecutive hearings Mr. Schnitzer misled the Court about doing a search. At the Aug. 11 Hearing, Mr. Schnitzer claimed: "*We* narrowed it down to the emails that were responsive and then reviewed those," and promised that "*I will go through with Mr. Kulowiec again*." Ex. 10 at 35:23-36:10. But he never went through Kulowiec's emails once. Ex. 1 at 20:18-21:7.

Judge Parker stated: "I'm very concerned about this process, I'm very concerned about what Mr. Kulowiec has produced, and I'm very concerned about the manner in which the search has been done." *See* Ex. 1 at 24:17-20. The Court directed Kulowiec "to provide your emails and data to your counsel so that counsel can separately comply with his obligation as an officer of the

court." *Id.* at 27:21-25.   The Court told Top Jet to provide search terms. *Id.* at 28:5-8. The Court

set Kulowiec's deposition for Sept. 27, 2021, adding that, when the deposition takes place, there

should be "no other documents apart from what's already been produced." *Id.* at 17:7-9.

The Court granted leave for Top Jet to initiate a separate miscellaneous action, so that it

may move to compel and for sanctions against Kulowiec.  *Id.* at 24:14-20; 25:4-22.

### I.      Revelation of Additional 63,030 Documents

On Sept. 13, Top Jet provided search terms. Top Jet requested production by Sept. 20 (a

week before the deposition). *See* Ex. 28. Mr. Schnitzer did not seek a meet-and-confer about the

search terms. On Sept. 19, one day before the requested production deadline, Mr. Schnitzer

announced he had run the searches but would not review them, in contravention of this Court's

Order, unless Top Jet paid "all costs, including search, collection, hosting, and production" as well

as Mr. Schnitzer's fees, purportedly totaling over $500,000. Ex. 11 at 6. Mr. Schnitzer rejected

any joint effort to narrow the hits: "If Top Jet wishes to narrow its request (either by date range,

by removing certain terms, or combining certain terms), Top Jet must agree to pay all costs

associated with the production, including the attorney review time." *Id.* at 6 n. 1. He said that there

were over 63,000 potentially responsive documents, contradicting his repeated claim that

Kulowiec had singlehandedly reviewed everything already.

On Sept. 19, Kulowiec at last produced his emails with Ohadi, Woolley, and Helsten. The

emails required no review, but Kulowiec withheld them for weeks past the response date, and past

the Sept. 9 Hearing. It was this production that contained the hidden documents discussed above

(emails and org charts describing Ohadi and Woolley as "members holding 10% interest in Jet

Midwest Group"). *See supra* §§ I, II (D), (E). Kulowiec never located these documents in response

to the Subpoena or the 2018 subpoena. This production came *after* Kulowiec told this Court "that's

all there is" (*see* Ex. 10 at 23:25); *after* this Court stated, "that certainly can't be everything you

14

have" (*id*. at 15:18-21); *after* Mr. Schnitzer's Sept. 9 claim that "the search has been completed," and *after* Mr. Schnitzer's false "affirmative representation" to the Court (*see* Ex. 1 at 12:11-13:6).

Top Jet attached 20 documents to its Oct. 8, 2021 Status Report, each showing Ohadi and Woolley directly or indirectly own Sky. *See* Related Action, Dkt. No. 41. Kulowiec's six months of review found just four of them. Top Jet found the other 16 by reviewing Kulowiec's emails with Ohadi, Woolley, and Helsten. But this is not where most information about Sky's ownership should be located. Kulowiec refuses to conduct a real search for Sky's ownership information.

On Sept. 24, Top Jet proposed to Mr. Schnitzer either a "clawback" or "quick peek" agreement, as discussed in the Advisory Committee Notes to 2006 Amendment to Rule 26(f) of the FRCP. Ex. 26. Both options would shift all cost to Top Jet. But Mr. Schnitzer never responded.

Also on Sept. 24, Mr. Schnitzer produced 24 emails hitting on a search term ("Forbes Hare") he added (not one of Top Jet's terms). He did this apparently to say he had produced documents. Mr. Schnitzer has reviewed *no* documents hitting on Top Jet's search terms.

## J.    Kulowiec's Deposition

No documents hitting on Top Jet's search terms were produced prior to Kulowiec's Sept. 27 deposition. Despite repeatedly promising the Court he had produced everything, when asked at his deposition if he had "produced all responsive documents," Kulowiec said: "I don't know." *See* Ex. 4 at 55:19-24. Kulowiec confirmed "the only thing" he did "[to] comply with the subpoena [was] search for emails using the keyword 'Skyblueocean.'" *Id*. at 39:2-11; 48:9-10; 57:8-19; 59:11-22. Kulowiec did not run searches in his "segregated folder" of Sky documents. *Id*. at 67:19-68:11. He did not search voicemail or texts, admitting: "[Y]es, I have deleted voice mails on my cell phone." *Id*. at 24:24-25, 35:16-20; 39:21-40:9; 60:3-4 ("Maybe" there were "ten voice mail messages and I didn't check that, maybe because they're all deleted."). Kulowiec did not do more because he chooses to "work for clients for which I'm getting compensated." *Id*. at 52:12-15. *See*

*also*, *e.g.*, *id.* at 37:7-10 (Q: Did you download the "documents that you created"? A: "no"); 47:19-21 (Q: "Did you do anything to make sure evidence [is] preserved on your hard drive?" A: "no."); 72:8-10 (Q: "did you search for responsive documents in your Redwelds?" A: "I did not."); 48:5 (A: "Did I make a copy of the hard drive? No."); 79:4-7 ("I did not talk to anybody at my firm to ensure the documents are preserved . . . or produced.").

Kulowiec admitted he has "notes that I recall relating to Skyblueocean and the—you know, who the direct shareholders were." Ex. 4 at 37:3-6. The notes have not been produced. Kulowiec has a "ton" of JMG files, but he only looked through one of them. *Id.* at 69:4-5. He admitted he "missed" an "email from Brad [Helsten]" about Sky's owners, adding: "Maybe there were others. . . . I don't recall." *Id.* at 58:19-59:4. Kulowiec admitted that many of these emails should have been produced in 2018: "Yeah, I guess maybe—probably I should have [produced them]," because they "show whether Ohadi and Woolley are owners of JMG." *Id.* at 113:8-15, 100:12-13; *see also*, *e.g.*, *id.* at 112:3-12 ("[Y]eah . . . it has relevance. It shows that people were talking about that. So – it was being discussed."); *id.* at 100:17-19; 101:9-16; 102:10-14; 103:6-7; 104:4-11 (same for other emails); 107:2-11 ("I don't know" why these emails weren't produced in 2018).

## K.    Kulowiec Withholds 38,774 Responsive Documents

On Sept. 27, less than two hours before Kulowiec's deposition, Mr. Schnitzer submitted a letter, alleging that he "informed Top Jet" its terms were too broad, but "Top Jet refused to remove any search terms or narrow any search parameters." *See* Related Action, Dkt. No. 35. Mr. Schnitzer did not reveal that he had demanded "Top Jet must agree to pay all costs" before he would *discuss* search terms, and that he had never sought a meet-and-confer. *See* Ex. 11 at n.1.

Soon after, Top Jet narrowed the potentially responsive documents by 40% (to 38,774) simply by: (i) narrowing the timeframe (July 1, 2015 through 2021); (ii) removing overlapping search terms; and (iii) eliminating false hits. *See* Ex. 31. Top Jet proposed prioritizing a review of

emails containing Ohadi and Woolley's first and last names. *See* Ex. 31. Top Jet also reiterated its offers of a "clawback" or "quick peek" agreement that would shift all cost and burden to Top Jet.

Mr. Schnitzer rejected any prioritized review: "[W]e will not be reviewing any such documents" and "will not" even run search terms "unless you/your client is paying the cost." *See* Ex. 32. As to a clawback agreement, Mr. Schnitzer insisted that Top Jet's counsel first "agree, on behalf of your firm and all clients in this matter, that you will not contact Mr. Kulowiec or his firm ever again, in any way, any proceeding whether it be subpoena or notice of deposition." *Id*.

On Oct. 13, 2021, Mr. Schnitzer sent a five-page letter to the Court, alleging that Top Jet's terms were too burdensome. *See* Related Action, Dkt. No. 42. But Kulowiec did not object to burden anytime in the first five months after receiving the Subpoena; instead, he claimed he did the review singlehandedly. Mr. Schnitzer falsely told the Court that he reviewed everything once with Kulowiec and that he would do it again. Ex. 10 at 35:23-36:10. Contradicting their claims they are concerned with "burden," Sky and Kulowiec regularly file lengthy letters that violate Judge Parker's rules. *See*, *e.g.*, Related Action, Dkt. Nos. 19, 35, 42 (each exceeding page limit).

Mr. Schnitzer's proposed search terms exclude the names of Sky's owners (JMG, Ohadi, Woolley). This seems designed to *miss* documents. He says *Sky*, *JMG*, *Wang*, *Kraus*, and *Chinese* are too broad. But *Sky* is the company at issue; *JMG* owns Sky; *Wang* was Top Jet's representative dealing with Sky; and Paul *Kraus* is Sky's only officer. *See* Related Action, Dkt. No. 42 at 3; *see also* Ex. 4 at 25:10-11 ("I have communicated with Paul Kraus about Skyblueocean"). As to *Chinese*, Kulowiec's clients used "Chinese" as a racial epithet for Top Jet. For example, Paul Kraus wrote about Top Jet: "Chinese will be here any minute." *See* Ex. 33. Kraus emailed Woolley (copying Kulowiec): "We have received signed docs from Chinese." *See* Ex. 34. Kraus referred to Top Jet's investments as "Chinese money." *See* Aug. 6 Order, FOF ¶ 209. At trial, Woolley's own

counsel asked him if "Chinese" was a derogatory term; Woolley answered: "I did say the Chinese" because "the owners were Chinese." *See* Ex. 35.at 605:2-14. Paul Kraus likewise testified at trial:

| Q: | "Do you agree with me, sir, that it's offensive to refer to people not by their names, but by their ethnicity?" |
|---|---|
| PAUL KRAUS: | "I don't think this was an inaccurate description." |
| Q: | "Do you think it's appropriate to refer to people coming to see you not by their names, but by their ethnicity?" |
| PAUL KRAUS: | "I don't know what's offensive and not offensive." |

Ex. 36 at 442:1-8.

## III.   ARGUMENT

### A.   Legal Standard

A party served with a subpoena *duces tecum* pursuant to Fed. R. Civ. P. 45 must produce all responsive documents in its "possession, custody or control." *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 provides that a responding party may be held in contempt for noncompliance, and Rule 37 provides for sanctions for noncompliance. *See PaineWebber, Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002). Under Rule 45, "a party issuing a subpoena is not required to bear the subpoenaed party's cost of compliance." *See In re World Trade Ctr. Disaster Site Litig.*, 21 MC 100 AKH, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) (citing *In re First American Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y.1998)*; Linder v. Calero–Portocarrero*, 180 F.R.D. 177, (D.D.C.1998).).

Under Rule 34, documents possessed by "a party's *current or former counsel"* are within that party's "'possession, custody and control.'" *See MTB Bank v. Fed. Armored Exp., Inc.*, 93 CIV. 5594 (LBS), 1998 WL 43125, at *4 (S.D.N.Y. Feb. 2, 1998). The Advisory Committee Notes to the Amended Rules state: "[A] non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."

*In re Woolworth Corp. Secs. Class Action Litig.*, 166 F.R.D. 311, 313 (S.D.N.Y. 1996).

**B.      The Court Should Compel Compliance with Subpoena**

**1.      Kulowiec's Undue Burden Objection Is Untimely**

Kulowiec's burden objection is disingenuous given the massive effort Kulowiec puts into fighting the Subpoena: multiple hearings, a deposition, and hundreds of pages of letters between the parties and the Court. *See supra* § II(C)-(K). Kulowiec also vastly overstates the cost of a review. *See* Rennagel Dec. ¶¶ 7, 15. Moreover, Mr. Schnitzer refuses to further discuss search terms, or Top Jet's offer to shift all burden through a clawback agreement. *See supra* § II (I), (K).

Kulowiec's burden objection is untimely and has been waived. Under Rule 45(d)(2)(B), objections must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." The Subpoena was served on April 29, with a return date of May 7. Kulowiec did not serve any objections, let alone burden objections, by May 7 or May 13. Therefore, Kulowiec's belated burden objection is waived. *See In re Corso*, 328 B.R. 375, 384-385 (E.D.N.Y. 2005); *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 6:12-cv-00023, 2013 WL 3660268, at *2 (W.D. Va. June 6, 2013) (finding undue burden objection waived where the subpoenaed party failed to timely invoke it, because "'Rule 45 requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.'") (quoting *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)).

Any burden that exists is outweighed by the international $100 million fraud committed by Kulowiec's clients. *See First American Corp. v. Price Waterhouse LLP*, 988 F.Supp. 353, 366 (S.D.N.Y. 1997) (in global fraud involving defendants who denied ownership, the "importance of the documents" outweighs even "significant" burden).

Kulowiec's affirmative representation that he singlehandedly reviewed everything twice contradicts his claim of burden. *See* Ex. 1 at 12:11-13:2. In September, the Court was told, "there

is nothing more that Mr. Kulowiec can locate which is responsive to the particular subpoena," and "the search has been completed." *See id.* In August, Mr. Schnitzer falsely claimed he had jointly reviewed all the emails with Kulowiec, and promised to "go through [them] with Mr. Kulowiec again." Ex. 10 at 35:23-36:10. He cannot now say it is too burdensome to do what he said he had already done, nor can he demand $500,000 for a review he said was completed. To date, Mr. Schnitzer has not yet reviewed (or produced) *any* documents hitting on any of Top Jet's search terms. He refuses to conduct a prioritized review. *See* Ex. 32.

Kulowiec and his counsel were twice ordered to review and produce documents, and twice falsely claimed they did so. They then demanded $500,000 to review the emails they were twice ordered to review. This mirrors the facts of *Exxon Mobil Corp. v. Schneiderman,* 316 F.Supp.3d 679 (S.D.N.Y. 2018). In *Exxon*, the responding party initially produced some documents, but then refused to continue production. *Id.* at 692-693. The court imposed "an immediate sanction for failure to comply with the Superior Court's order." *Id.* at 696. The same should be done here.

## 2. <u>Cost-Shifting Is Not Appropriate in Post-Judgment Discovery</u>

Kulowiec and Sky (his client) use a variation of the classic "shell game" played by conmen to obstruct Top Jet's collection of a $100 million judgment. *First*, Sky disclaims control over its documents held by Kulowiec ("Kulowiec-Sky Documents"). *Second*, Sky's litigation counsel (Polsinelli) appears in this proceeding and demands to review these same documents prior to production. *See, e.g.,* Ex. 10 at 37:2-14. *Third*, Kulowiec refuses to review the 38,774 emails unless Top Jet pays half a million dollars. *See* Ex. 32. Sky refuses to review or produce the Kulowiec-Sky documents. But Kulowiec won't produce or review them either. This is wrong.

The Kulowiec-Sky documents belong to Sky because, under Rule 34, "the clear rule is that documents in the possession of a party's *current or former* counsel are deemed to be within that party's 'possession, custody and control.'" *MTB Bank*, 1998 WL 43125, at *4 (internal cites

omitted). "[I]f any defendant elects to conduct a full privilege review of its e-mails prior to production, it shall do so at its own expense." *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 432 (S.D.N.Y. 2002). If Sky wants to review documents for privilege, Sky must pay. If Sky does not want to pay, the documents must be produced without a review. Sky cannot evade post-judgment discovery by keeping its documents with a lawyer who demands exorbitant sums to produce them. Judgment-debtors do not get to foist their post-judgment discovery expense onto creditors. "Documents obtain no special protection because they are housed in a law firm; '[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney.'" *Ratliff v. David Polk & Wardwell*, 354 F.3d 165, 170-71 (2d Cir. 2003) (quoting *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962)).

When Sky disclaimed the Kulowiec-Sky Documents as "not within Sky's possession, custody or control," *see* Related Action, Dkt. No. 21-1, Sky delegated, to Kulowiec, the authority to waive Sky's privileges. *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (client may implicitly grant attorney authority to waive privilege); *Drimmer v. Appleton*, 628 F. Supp. 1249, 1252 (S.D.N.Y. 1986) (same)*;* The New Wigmore: A Treatise on Evidentiary Privileges § 6.12.3 (same).

Kulowiec has long since waived privilege by refusing to even *review* the 38,774 Kulowiec-Sky emails, much less create a log for them. "[T]he privilege log must be served with the objections" and "the failure to do so may result in waiver of the privilege claims." *In re Chevron Corp.*, 749 F.Supp.2d 170, 181 (S.D.N.Y. 2010) (Kaplan, J.). An attorney's failure to timely log and produce subpoenaed documents may waive the client's privileges, especially if the client sought "tactical advantage at their adversaries' expense." *Id*. at 184. That is what happened here. The award and judgment are not paid, and nothing is produced.

A half-year has passed since the Subpoena was served. In *Chevron*, Judge Kaplan found that belated production of a log "substantially prejudiced the parties seeking discovery" and was "a deliberate attempt" to "create the maximum possibility for delay." *Chevron*, 749 F.Supp.2d at 183, 185. The same is even more true here. A federal court has found a "serious risk" Sky and its owners will use any delay to dissipate assets; JMG's owners are currently misleading the Eighth Circuit Court of Appeals on factual matters while Kulowiec withholds evidence. *See supra* § II(C). In *Chevron*, the belated log was "over 2,000 pages long and claim[ed] privilege as to 8,652 documents." *Id.* at 173. Kulowiec has not even reviewed, much less logged, the 38,774 emails. His August log covered just 28 items, was three months late, and egregiously misapplied privilege.

In *Chevron*, the Court deemed all privilege waived and ordered a full production. *Chevron*, 749 F.Supp.2d at 185. So too should this Court. *See also*, *e.g.*, *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 04 CIV. 2271 (RWS), 2006 WL 3771010, at *7 (S.D.N.Y. Dec. 15, 2006) (Sweet, J.) ("Courts in this Circuit . . . have refused to uphold a claim of privilege in response to a subpoena when no privilege log has been produced in compliance with Federal Rule of Civil Procedure 45(d)(2)."); *Kennedy v. Basil*, 18-CV-2501(ALC)(KNF), 2019 WL 2343153, at *4 (S.D.N.Y. June 3, 2019) (Fox, M.J.); *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 14CIV2590VMJCF, 2017 WL 11628084, at *1 (S.D.N.Y. June 28, 2017) (Francis IV, M.J.); *Fleisher v. Phoenix Life Ins. Co.*, 11 CIV. 8405 CM JCF, 2013 WL 42374, at *3 (S.D.N.Y. Jan. 3, 2013) (Francis IV, M.J.).

It is improper to force a judgment-creditor (Top Jet) to pay for a judgment-debtor's (Sky's) post-judgment discovery. Even if Kulowiec owned the Kulowiec-Sky Documents, "[u]nder Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance." *In re World Trade Ctr.*, 2010 WL 3582921, at *1. This is especially true when "the nonparty has an interest in the outcome of the case." *Id.* Kulowiec

has an interest because he is counsel to Sky. *See, e.g., In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (auditor who served defendant during an alleged fraud was "not a classic disinterested non-party"). Kulowiec cites *In re Subpoena to Loeb & Loeb LLP*, 19-Misc. Civ. 241 (PAE), 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019). But in *Loeb*, "neither Loeb nor its former client … is a party to the Adversary Proceeding." *Id*. Kulowiec's client is the Judgment-Debtor owing nearly $100 million. Moreover, Sky's parent paid or owed Kulowiec over half a million in 2017 alone. *See* Ex. 23 at JMG_TRO_001616-17. Sky's affiliates have apparently paid him many, many millions.

Kulowiec cannot shield emails or shift cost based on his own failure to maintain segregated client files. *See* NY City Bar Ethics Op. 2008-01[2] (lawyers obligated to organize client files for easy retrieval and cannot charge for a failure to do so); *see also AP Links, LLC v. Russ*, 299 F.R.D. 7, 13–14 (E.D.N.Y. 2014) (the fact that an attorney who maintained "records such that they are not readily searchable—particularly where [many of them are] e-mail communications which were at one time electronically stored—is not a sufficient reason to quash this request"). Any other result creates a new privilege, uniquely for attorneys with disorganized files.

Obstructionist tactics weigh against cost-shifting. *See, e.g., Nike, Inc. v. Wu*, 13 CIV. 8012 (CM), 2020 WL 257475, at *11 (S.D.N.Y. Jan. 17, 2020), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021) ("a nonparty may be required to bear some or all of its expenses on the basis of 'the [non-party's] degree of good faith' in responding to the subpoena.") (citation omitted); *In re First Am. Corp.* 184 F.R.D. 234, 243 (S.D.N.Y. 1998). The HKIAC Tribunal already found Sky did not act in "good faith." Ex. 12 at ¶19.15.

---

[2]    https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/formal-opinion-2008-01-a-lawyers-ethical-obligations-to-retain-and-to-provide-a-client-with-electronic-documents-relating-to-a-representation

**3.      Kulowiec's Refusal to Turn Over Documents Is Unjustifiable**

Kulowiec cannot claim burden when he refused to work with Top Jet to further narrow search results. Top Jet proposed prioritizing a review using Ken Woolley and Paul Ohadi's first and last names. *See* Ex. 31. Kulowiec not only refused, he refused to find out the number of hits for these terms unless first paid by Top Jet. *See* Ex. 11. Kulowiec's proposed search method requires hits on multiple keywords, but excludes Sky's owners from the search terms. This seems designed to *miss* responsive documents. In 2018, Kulowiec's failure to find critical documents caused multiyear delays, millions in legal fees, and missing evidence. This year, Kulowiec's own review missed 16 of the 20 emails attached to Top Jet's Status Report. *See supra* § II(I). He missed them because he used an overly narrow search term ("Skyblueocean"). Ex. 4 at 39:2-11; 48:9-10; 57:8-19; 59:11-22. He should not select overly narrow terms now. *See* Rennagel Dec. at ¶¶8, 21.

One cannot claim burden while rejecting options t eliminate burden. A clawback agreement would shift all burden by having Top Jet first review the 38,774 emails for responsiveness (Kulowiec would review the responsive subset for privilege). *See* Advisory Committee Notes to 2006 Amendment to Rule 26(f) of the FRCP. Kulowiec refused—unless the Pillsbury lawyers who have litigated these issues for five years be excluded from any review. *See* Related Action, Dkt. No. 42 at 5; Ex. 39. Creating a new team just for this review would be expensive and inefficient. New lawyers, with no background in this complex multiyear fraud case (and who cannot consult with attorneys who are familiar with this case), would struggle to spot responsive documents. This is especially true because the judgment-debtors, insiders/owners, and their counsel have gone to great lengths to hide and obscure the ownership structure of Sky and its parent, JMG.

**C.      The Documents Should Be Produced Under the Crime-Fraud Exception**

The crime-fraud exception applies if there is "probable cause" to believe that a fraud was committed. *See Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (S.D.N.Y. 2013); *Pearlstein*

*v. BlackBerry Limited*, 13CV07060CMKHP, 2019 WL 1259382, at *9 (S.D.N.Y. Mar. 19, 2019). Probable cause "deals with 'probabilities' rather than 'hard certainties.'" *Amusement*, 293 F.R.D. at 426 (citation omitted). "There need not be a 'definitive[]' showing" of fraudulent intent; there need only be "'a reasonable basis for believing that [the] objective was fraudulent.'" *Id*. (citing *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1039 (2d Cir. 1984)).

The facts here far exceed the "probable cause" standard. Sky's owners—JMG, Ohadi, and Woolley—have each been found liable for "numerous fraudulent actions and transfers." March 30 Order at 10-11. They "lied about JMG's ownership, concealed assets, and concealed documents" proving Ohadi and Woolley own JMG. *Id*. at 10. The fraud to conceal JMG's owners is inextricably linked to the fraud to conceal Sky's owners, because JMG owns Sky.

The crime-fraud exception applies whenever a client intends to commit a fraud, "even if the attorney was unaware of this purpose." *Amusement*, 293 F.R.D. at 426. But Kulowiec knew of JMG's frauds. *See supra* § II(C). He privately discussed JMG's fraud while concealing the fraud from courts and creditors. *See id*. He helps his clients through delays and missing documents. This Court should order production of the Kulowiec-Sky documents under the crime-fraud exception.

### D.    Kulowiec Should Pay Top Jet's Reasonable Attorney's Fees

Disobeying a subpoena is subject to contempt. Fed. R. Civ. P. 45(g). Resisting discovery is sanctionable under Rule 37. *See* Fed. R. Civ. P. 37; *see also In re Smith*, 14-21261 (JJT), 2017 WL 1190590, at *6 (Bankr. D. Conn. Mar. 29, 2017). In *Smith*, as here, a subpoena was served on the debtor's attorney after the debtor failed to produce documents. When, as here, the attorney didn't initially object but made a deficient production, the court imposed a daily coercive fine and ordered payment of plaintiff's fees and costs. Kulowiec should likewise be ordered to produce the 38,774 emails, and pay Top Jet's fees and costs in compelling compliance with the Subpoena.

IV.   **CONCLUSION**

For the reasons set forth herein, the motion to enforce the subpoena and for sanctions

against Kulowiec should be granted.

New York, New York
Dated: October 22, 2021

Respectfully submitted,

PILLSBURY WINTHROP SHAW
PITTMAN LLP

By: */s/ Geoffrey Sant*
Geoffrey Sant
Ed Flanders
Carol Lee
Michelle Ng
31 W. 52nd Street
New York, New York 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500

Hugh M. Ray, III
Two Houston Center
909 Fannin Suite 2000
Houston, TX 77010
Telephone: 713-276-7600
Facsimile: 713-276-7673

Counsel for Plaintiff / Judgment-Creditor
Top Jet Enterprises, Ltd.