**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
TOP JET ENTERPRISES, LTD.,

                              Plaintiff,

           -against-

DAVID KULOWIEC,

                              Defendant.
-----------------------------------------------------------------X

**OPINION AND ORDER**
**COMPELLING DOCUMENT**
**PRODUCTION**
**AND PROTECTIVE ORDER**
**21-MC-789 (RA) (KHP)**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Presently before the Court is Plaintiff and Judgement Creditor, Top Jet Enterprises, Ltd.'s ("Top Jet"), motion to enforce subpoenas and impose sanctions against attorney David Kulowiec. Specifically, Plaintiff seeks an order (1) compelling Defendant to produce all 38,774 emails/documents identified by Defendant that were responsive to Plaintiff's search terms; and (2) sanctioning Kulowiec by ordering him to pay Top Jet's attorney's fees for having to move to compel compliance. For the reasons set forth below, Plaintiff's motion is GRANTED.

## BACKGROUND

On January 25, 2021, following an arbitration ruling in favor of Plaintiff, the Western District of Missouri confirmed a final judgment of over $90 million against Skyblueocean Ltd. ("Sky"), and Jet Midwest Group, LLC ("JMG"), an owner of Sky (W.D. Mo. Case No. 20-cv-00532) ("Confirmation Action"). Both Sky and JMG have failed to satisfy the judgment against them. According to Top Jet, F. Paul Ohadi and Kenneth Wooley are owners of JMG and also have an ownership interest in Sky.[1] Defendant Kulowiec served as a lawyer for Sky and JMG during the

---

[1] In another action in the Western District of Missouri, JMG, Ohadi and Woolley were found liable for $41 million in fraudulent transfers. Ohadi and Wooley denied ownership interests in JMG. *See Jet Midwest International Co.,*

relevant time and has documents and information concerning the corporate ownership structure of Sky and JMG, as well as communications with Ohadi and Wooley about Sky and JMG.

On April 29, 2021, Plaintiff served a subpoena *duces tecum* upon Defendant seeking documents concerning: (1) shares of Sky allocated to Ohadi and Wooley; (2) the Paul Ohadi Trust's acquisition of an ownership in Sky; (3) the ownership structure of Sky; (4) communications with Ohadi and/or Wooley about Sky; and (5) communications with Brad Helsen, Esq.[2] about Sky. (Pl's Apr. 29, 2021 Kulowiec Subpoena, ECF No. 20-1.) The information is sought to assist Top Jet in collecting the judgments it obtained. Initially, Defendant was to produce responsive documents by May 7, 2021, but obtained multiple extensions from Plaintiff citing a delay in completing his review. (*See* Decl. of Rachelle L. Rennagel, ECF No. 6.)

On June 1, 2021, Defendant produced a total of 22 responsive documents, none of which set forth Sky's ownership. Defendant objected to producing other documents responsive to the subpoena on the basis of attorney-client privilege and work product but did not produce a privilege log. Notably, at this time, Defendant did not object due to any burden in producing responsive documents.

Based on Defendant's non-compliance with the subpoena, on June 25, 2021, Plaintiff registered the judgment in this District (*Top Jet Enterprises, Ltd. v. Sino Jet Holding, Ltd., et al.*, Case No. 21-mc-497 (RA) (KHP)) ("Related Action"). That case was also assigned to me for general management including resolving any discovery disputes.

---

*Ltd. v. Jet Midwest Group, LLC et al.*, W.D. Mo. Case No. 18-cv-6019-FJG ("Fraudulent Transfer Action"), ECF No. 699 ("Aug. 6 Order"). Sky has denied that Ohadi and Woolley are owners of Sky as well, notwithstanding documents showing otherwise obtained by Plaintiff in the Fraudulent Transfer Action. (Pl's Motion to Enforce Subpoena, pg. 3, ECF No. 2.)

[2] Brad Helsten served as Ohadi and Woolley's personal attorney and often corresponded with Defendant regarding ownership of Sky and/or JMG.

In advance of an August 11, 2001 conference before the undersigned, Defendant served a privilege log noting 28 withheld documents. Plaintiff took issue with the specificity of the log and the privilege designations. Plaintiff also argued that the log was untimely and any privilege waived as a result.

During the August 11, 2021 conference to discuss Defendant's compliance with the subpoena, Defendant confirmed he had emails with various employees, officers, or directors of JMG and Sky. (Case Management Conference Transcript, pg. 14, Related Action ECF No 23.) He also confirmed that he withheld certain structure charts and agreements under the belief that they were protected under the work-product doctrine. *Id.* at 16-17. Because it appeared from the face of the privilege log that Defendant has over-designated documents as privileged, I directed Defendant to re-review the documents in light of my decision in *Pearlstein v. BlackBerry Limited*, 2019 WL 2281280 (S.D.N.Y. May 29, 2019), which sets out the applicable standards for when documents may be withheld on the basis of privilege, update the log and produce documents that were not privileged. In response to questioning about how many documents had been reviewed to locate the less than 50 produced and/or logged, Defendant's counsel Edward Schnitzer represented that Defendant had reviewed thousands of e-mails. *Id.* at 36. I ordered Defendant's counsel to conduct a follow-up search and make an affirmative representation that there were no more documents responsive to Plaintiff's subpoena that had not already been identified.

On August 25, 2021 Plaintiff served a second subpoena upon Defendant requesting his deposition and production of all emails between Kulowiec and Woolley, Ohadi and/or Helsten, as well as various documents relating to Forbes Hare Legal Services, a law firm that represented

3

Sky in a proceeding before the Grand Court of the Cayman Islands.[3] On August 26, 2021, Defendant withdrew his claim of privilege as to some of the documents he had previously logged, including a handwritten "Joint Venture Structure" chart showing Ohadi owns 20% of Sky. On September 8, 2021, Defendant produced six more documents, including an organizational chart showing Ohadi and Woolley had an ownership interest in both Sky (3% each) and JMG (10% each).

On September 9, 2021, at the next case management conference, Mr. Schnitzer stated

> Mr. Kulowiec has produced all that he had in response to that particular subpoena. . . . Mr. Kulowiec looked for any responses that he provided, and if he responded to an email, he provided them. If there is no response provided, that's because he did not respond [to] the email . . . [T]he search has been completed. . . . there is nothing more that Mr. Kulowiec can locate which is responsive to the [initial] subpoena.

(Case Management Conference Transcript, pg. 11-13, Related Action ECF No. 30.) After this affirmative representation made by Mr. Schnitzer, Plaintiff quickly brought to the Court's attention that Mr. Schnitzer did not independently review the thousands of e-mails identified as potentially relevant by Defendant because Mr. Schnitzer did not have access to those documents. I expressed my concern that Defendant's method of review may not have actually been sufficient to locate responsive documents and directed Top Jet to provide search terms to aid Mr. Schnitzer in taking another stab at ensuring the search was done in a manner reasonably likely to locate responsive documents. I also granted Plaintiff's request to file an action to compel compliance with the subpoena.

The broad search terms provided by Top Jet returned a universe of 63,317. This volume rendered it impossible to complete the review and produce documents before Defendant's

---

[3] The documents requested in the second subpoena are substantially similar to those requested initially with the exception of the Forbes Hare documents.

deposition.  Defendant also estimated that the review would cost $500,000 inclusive of attorneys' fees, hosting and production costs.  As an alternative to bearing such costs, Plaintiff offered to conduct a review of all documents pursuant to a "clawback" or "quick peek" agreement.  Defendant rejected the proposal and instead countered by requesting that Plaintiff's firm have an independent team of its lawyers review the documents to protect any client confidences (i.e., an ethical wall).  Plaintiff rejected the counteroffer.  Nevertheless, the parties were able to agree on search terms that narrowed the universe of documents for review to 38,774.  On September 27, 2021, Defendant informed the Court that full compliance with the subpoenas would impose an undue burden and reiterated his request that Plaintiff bear the cost of review.  (ECF No. 35.)

Top Jet then deposed Kulowiec to understand how he undertook his search for documents and gather other information about Sky and JMG's ownership structure and other information relevant to collecting on the judgment.  Kulowiec testified that he searched for emails that contained the keyword "Skyblueocean" to identify documents responsive to the subpoena.  (*See* Kulowiec Deposition Transcript, pg. 39; ECF No. 7-4).  Defendant also produced his emails with Ohadi, Woolley, and Helsten, which provided information as to JMG's ownership.  He conceded he failed to search other files and admitted to missing documents that should have been produced sooner.

Still attempting to resolve the dispute over the search for documents, on October 8, 2021, Defendant sought to further refine the search terms in a way that would narrow the universe of documents to a universe of 5,459 documents and ideally exclude documents pertaining to entities that were not related to Sky or JMG but had Sky in their names and documents pertaining to other clients of Defendant.  Top Jet rejected this.

Unable to resolve the dispute and faced with a motion to compel, Defendant decided to move forward with a review of the 38,774 documents after his deposition despite raising objections to the burdens and cost of such a review.  On December 29, 2020, Defendant filed a letter with the court stating he had reviewed the 38,774 responsive documents. (ECF Nos. 29-30.)  This review resulted in identification and production/logging of 1,650 additional responsive documents in several tranches (1,129 documents in September 2021, 190 documents were produced on December 11, 2021, 83 documents were produced on December 22, 2021, and 248 documents were produced on December 28, 2021).  Some of the documents produced in December were responsive to the second subpoena that contained a new category of documents.  Of the documents produced, 27 were redacted to remove confidential information, attorney-client privileged communications, and/or attorney work product.  Two documents were completely withheld on privilege grounds and logged.  In one produced e-mail from 2016, Helsten asked Defendant to confirm the structure and ownership of JMG.  No responsive email was produced.  Top Jet points to this omission as evidence that the production was incomplete.  Defendant contends he searched for a response and found none.

Top Jet now argues that Defendant should be compelled to turn over all of the 38,774 documents returned from application of the search terms because any objections (including on the basis of privilege) were waived by Defendant's lateness in responding to the subpoena, initial failures to appreciate how to conduct an appropriate search, prior withholding of documents as privileged and then withdrawing privilege assertions, failure to produce full email chains that should exist based on what was produced, and alleged efforts to stall and obstruct discovery. Top Jet lodges various accusations against Defendant and his counsel based on conduct of Sky and JMG in other proceedings, in addition to charging that they have been

6

playing games in responding to the subpoenas. Top Jet seeks its costs and attorneys' fees as a sanction for having to bring a motion to compel.

Defendant denies Top Jet's allegations, argues it has attempted to comply, produced nearly 13,000 pages of documents in response to the subpoenas at great cost and asks for reimbursement of his review costs of approximately $205,000.

## DISCUSSION

### A. Legal Standard

"Discovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure." *First City, Tex.-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002). Judgment creditors are given the freedom to make a broad inquiry and are "entitled to a very thorough examination of a judgment debtor with respect to its assets, including discovery of the identity and location of any of the judgment debtor's assets, wherever located." *Sberbank of Russia v. Traisman*, 2016 WL 4479533, at *1 (D. Conn. Aug. 23, 2016) (Eginton, J) (quoting *British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000)). Federal Rule of Civil Procedure ("Rule") 69(a)(2) provides that, "[i]n aid of [a] judgment or execution, the judgment creditor . . . may obtain discovery from *any person* — including the judgment debtor — as provided elsewhere in the Rules[.]" (emphasis added).

In light of this liberal standard, an individual properly served with a subpoena *duces tecum* in post-judgment discovery must produce "all responsive documents in its possession, custody or control." *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 provides that a responding party may be held in contempt for noncompliance, and Rule 37 provides that a party may request sanctions for noncompliance. *See PaineWebber, Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002); Fed. R. Civ. P. 45, 37. Under Rule 45, "a party issuing a subpoena is not

7

required to bear the subpoenaed party's cost of compliance." *See In re World Trade Ctr. Disaster Site Litig.*, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) (citing *In re First American Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). However, Rule 45(d)(1) provides that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Rule 45(d)(2)(B), which permits objections to the subpoena, also requires the district court, if it does compel compliance, to "protect" the non-party "from significant expense." Under Rule 45(d), the subpoena recipient may move to quash or modify the subpoena if it subjects a person to undue burden. *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019). The trial court has broad discretion to determine whether a subpoena imposes an undue burden. *Id.*

Under Rule 45(d)(2)(B), objections to a subpoena must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." The Second Circuit has held that objections to a subpoena for production and inspection must set forth all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena so that discovery does not become a game. *DG Creditor Corp. v. Dabah*, 151 F.3d 75, 81 (2d Cir. 1998). "The fourteen-day time limitation to serve written objections to a subpoena is crucial as failure to do so typically constitutes a waiver of such objections." *In re Corso*, 328 B.R. 375, 384 (E.D.N.Y. 2005). Nonetheless, an untimely objection may be allowed upon a showing of good cause where "the subpoena is overbroad so that it goes beyond the boundaries of fair discovery, the recipient is a non-party acting in good faith, and the counsel for both the recipient and the issuing party were in contact concerning the recipient's compliance before the ultimate challenge to the subpoena." *In re Parikh*, 397 B.R. 518, 525

(Bankr. E.D.N.Y. 2008); *Semtek Int'l, Inc. v. Merkuriy Ltd.*, 1996 WL 238538, at *2 (N.D.N.Y. May 1, 1996).

When a person subject to a post-judgment subpoena under Rule 45 fails to comply, a judgment creditor may move under Rule 37(a), to compel compliance with post-judgment discovery requests and sanctions. *Hindman LLC v. Mihaly*, 2021 WL 5362255, at *2 (S.D.N.Y. Oct. 22, 2021). Under Rule 37(a)(5)(A), if the motion is granted or the requested discovery is provided after the filing of the motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.*

B. Application

    a. Subpoena Enforcement

As noted above, under Rule 45, objections must be served at the earliest point, before the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). A failure to timely object is deemed a waiver absent a showing of good cause. *Semtek Int'l, Inc.*, 1996 WL 238538, at *2. Here, the subpoena was served on April 29, with a return date of May 7 (also the date when any objections would be due). However, Defendant requested and was granted additional time to produce responsive documents. Nonetheless, when Defendant finally made his production on June 1, 2021, only producing 22 documents, he did not raise any undue burden objection. In fact, in the following months, Defendant appeared at several conferences before the Court asserting that his production was complete and that he only withheld documents that were subject to privilege. Despite these representations, each time the Court found Defendant had not fully or correctly conducted the

search and directed Defendant to go back and redouble his search efforts, more responsive documents were located.

It was not until after the Court required the parties to discuss search terms which resulted in the return of a review universe of over 38,000 documents when Defendant objected on the grounds of undue burden. At the time, he estimated the cost of review would be $500,000. However, he did not submit competent evidence of such costs, as required to establish undue burden. *In re Application of Bloomfield Investment Resources Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016).

Here, it is clear Defendant caused the instant dispute by failing to object when he should have to what are overbroad document demands insofar as they request "all documents and communications" on various topics and are not limited by date range. He compounded the issues by failing to conduct a reasonable search for documents in the first place. An individual responding to a subpoena issued pursuant to Rule 45 has an obligation to conduct a reasonable search for documents. *See also* Fed. R. Civ. P. 26(b). Perfection is not required. *Winfield v. City of New York*, 2017 WL 5664852, *9 (S.D.N.Y. Nov. 27, 2017). However, litigation is not a game, and parties cannot engage in halfhearted or ineffective efforts to identify and produce relevant documents. *Id*. (citations omitted). Defendant's initial search was clearly inadequate, as it did not involve search of all sources of relevant documents or search terms reasonably designed to locate relevant documents. Defendant searched only for the term "SkyblueOcean" initially, when there were other search terms he could have used to find responsive documents such as those later provided by Top Jet including "brad@helsten.com," "Sky," "SBO," "Wooley," "Ohadi," and "Top Jet." Defendant further exacerbated the issues by withholding documents that were not privileged. This Court should not have had to give Defendant—a lawyer--a tutorial on what constitutes a privileged communication.

Defendant's 11th hour review of the 38,774 responsive documents and subsequent production did not completely cure his initial failings. *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 299-300 (S.D.N.Y. 2003). As noted during the oral argument, Plaintiff still has concerns regarding the sufficiency of Defendant's latest production and has cited correspondence where responses are purportedly missing. While Defendant has represented that he searched for but did not locate the documents, the Court has concerns that the review may not have been complete given all of the problems with the review thus far. Further, that Defendant is a lawyer for Sky and JMG – the entities whose documents Defendant has, puts him in a different category than a non-party to the dispute between Top Jet and Sky/JMG. *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. at 303; *In re Kaleida Health*, 2021 WL 3398929, at *2 (W.D.N.Y. Aug. 4, 2021). Accordingly, I find that Defendant has waived any undue burden argument by his late objection and other failures outlined above and not shown good cause for this Court to consider his late objection based on undue burden. Thus, the turnover of documents is warranted. *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 183, 188 (S.D.N.Y. 2010) (ordering immediate production of "each and every document responsive to the subpoenas (irrespective of whether any privilege or other protection against disclosure has been or hereafter is or may be claimed)" due to the subpoenaed party's staggered objections and incomplete privilege log).

At the same time, it is likely that there are many non-responsive documents among the universe of 38,774 documents and that there are documents concerning Defendant's other clients that may be confidential and privileged. Those other clients retain their right to assert privilege. To be sure, any privilege that could have been asserted by Defendant with respect to Sky and JMG is waived. Sky and JMG, as owners of the privilege, implicitly disclaimed any applicable privilege at this point. Indeed, Plaintiff asserts, and Defendant does not deny, that

11

both entities have notice of the subpoenas and disclaimed having control of documents held by Defendant.  *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (client may implicitly grant attorney authority to waive privilege); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2004 WL 2375819, at *3–4 (S.D.N.Y. Oct. 21, 2004) ("A party which seeks to uphold the privilege must take affirmative measures to maintain the confidentiality of attorney-client communications.").

To protect the interests of Defendant's other clients, the appropriate remedy is for Defendant to turn over the 38,774 documents, subject to a Protective Order that requires Top Jet's counsel to flag and return to Defendant all documents within the 38,774 that do not concern Sky and JMG.  Top Jet's outside counsel shall conduct the review and shall not share or discuss any documents belonging to other clients of Defendant with Top Jet or anyone else.  Top Jet's outside counsel shall not retain any copies of the other client's documents contained in the review set of 38,774.  All such documents shall remain privileged and confidential and shall not lose any protections by virtue of having been included in the set of 38,744 consistent with maximum protections provided under Federal Rule of Evidence 502.

### b. Attorney's Fees

Plaintiff is entitled to recovery the attorney's fees in connection with the motion to compel.  Here, Defendant provided much of the contemplated discovery after the motion was filed and fully briefed.  Accordingly, an award of reasonable expenses and attorney's fees is mandatory under Rule 37(a)(5)(a).  *Hindman LLC*, 2021 WL 5362255, at *2.  Given the Court's familiarity with this action and after careful consideration, the potential limited exceptions – movant's failure to confer in good faith, justifiable nondisclosure, or other circumstances to make an award unjust— are not present to overcome granting the award.  *Wager v. G4S Secure Integration, LLC*, 2021 WL 4434953, at *6 (S.D.N.Y. Sept. 24, 2021).  However, Defendant may

seek contribution from Sky and JMG, as this entire action was brought about solely by their failure to comply with discovery sought by Top Jet and failure to pay a judgment. Accordingly, Plaintiff shall submit an application for attorney's fees by February 11, 2022. Defendant shall have 30 days thereafter to respond to the application.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to compel is GRANTED. Defendant shall produce all 38,774 documents to Plaintiff by **February 9, 2022 subject to the specific procedures outlined above with regard to any documents among the 38,774 that belong to clients of Defendant other than Sky and JMG with any such documents being fully protected from any argument of waiver of privilege by Federal Rule of Evidence 502**.

Plaintiff's motion for attorney's fees is GRANTED. Plaintiff shall submit an application by **February 11, 2022**. Defendant shall have 30 days thereafter to respond to the application. No replies will be permitted.

**SO ORDERED.**

DATED:     New York, New York
           January 31, 2022

_____
KATHARINE H. PARKER
United States Magistrate Judge