**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TOP JET ENTERPRISES, LTD., | ) | |
| | ) | |
| Plaintiff/Judgment-Creditor, | ) | |
| | ) | Case No. 1:21-MC-00789-RA-KHP |
| vs. | ) | |
| | ) | Related Case: 1:21-MC-00497-RA-KHP |
| DAVID KULOWIEC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DAVID KULOWIEC'S OPPOSITION TO PLAINTIFF'S
### IMPROPER MOTION FOR ATTORNEY'S FEES

**MONTGOMERY McCRACKEN**
**WALKER & RHOADS, LLP**

Edward L. Schnitzer
Timothy Semenoro
437 Madison Avenue
New York, NY 10022
Telephone: 212-551-7781
Facsimile: 212-599-5085
eschnitzer@mmwr.com
tsemenoro@mmwr.com

Counsel for David Kulowiec

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

        A.      PLAINTIFF'S MOTION FOR ATTORNEYS' FEES IS IMPROPER ............... 2

                1.      THIS COURT ORDERED PLAINTIFF TO SUBMIT A FEE
                        APPLICATION NOT RENEW OR FILE A NEW MOTION FOR
                        ATTORNEYS' FEES ............................................................................. 2

                2.      PLAINTIFF'S MOTION IMPROPERLY SEEKS TO EXPAND
                        THE SCOPE OF ALLOWED FEES ....................................................... 3

        B.      PLAINTIFF CANNOT MEET ITS BURDEN IN ESTABLISHING AN
                ENTITLEMENT TO $916,848.81 OF ATTORNEY'S FEES ........................... 3

                1.      ONLY THE REASONABLE FEES PAID BY PLAINTIFF IN
                        CONNECTION WITH THE MOTION TO COMPEL ARE
                        RECOVERABLE ................................................................................ 3

                2.      ONLY REASONABLE FEES ARE ALLOWED ................................... 6

                        A.      PLAINTIFF'S TIME AND FEE REQUESTS ARE
                                UNREASONABLE ................................................................ 6

                                (1)     OTHER MOTIONS TO COMPEL OFFER
                                        GUIDANCE AS TO THE REASONABLE
                                        NUMBER OF HOURS ................................................ 7

                                (2)     OVER ELEVEN TIMES THE EXPECTED
                                        EFFORT WENT INTO THE MOTION ............................ 8

                                (3)     MORE ALLEGED TIME FOR THE REPLY
                                        THAN WHAT ENTIRE MOTIONS NEED ................... 10

                                (4)     FURTHER EXAMPLES OF EXCESSIVE OR
                                        IMPROPER BILLING .................................................... 10

                                (5)     TOP JET'S COUNSEL BILLED FOR
                                        ATTORNEYS DOING WORK WHICH SHOULD
                                        HAVE BEEN PERFORMED BY MORE JUNIOR
                                        ATTORNEYS AT LOWER HOURLY RATES ............. 11

                                (6)     PILLSBURY'S BLOCK BILLED ENTRIES
                                        SHOULD BE REJECTED .............................................. 13

                                (7)     PILLSBURY'S REDACTIONS MAKE THE
                                        ENTRIES INDECIPHERABLE ...................................... 14

                                (8)     MATHEMATICAL INCONSISTENCIES ALSO
                                        RENDER PLAINTIFF'S MOTION SUSPECT ............. 15

                                (9)     TIME ENTRIES FOR OTHER MATTERS
                                        SHOULD BE REJECTED .............................................. 16

## <u>TABLE OF CONTENTS</u>

**Page**

(10) PLAINTIFF SHOULD NOT BE REWARDED
FOR THEIR COUNSEL UNNECESSARILY
COMPLICATING THE MOTION ................................. 17

(11) THE MOTION TO COMPEL SHOULD HAVE
TAKEN LESS TIME ...................................................... 18

B. PLAINTIFF'S BILLING RATES ARE
UNREASONABLE ................................................................. 19

(1) PILLSBURY'S BILLING RATES ARE
UNREASONABLE COMPARED TO
PREVAILING MARKET RATES ................................. 19

(2) THE HOURLY RATES CLAIMED BY TOP JET
SHOULD BE REDUCED ............................................. 22

(3) A $900,000 FEE REQUEST IS MORE IN LINE
WITH LITIGATING AN ENTIRE CASE ..................... 22

(4) PLAINTIFF'S COUNSEL HAS HISTORICALLY
CLAIMED UNREASONABLE FEES ........................... 23

III. CONCLUSION .......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*601 W. Assocs. LLC v. Kleiser–Walczak Constr. Co.*,
No. 03 Civ. 7942(DFE), 2004 WL 1117901 (S.D.N.Y. May 18, 2004)................................19

*Air Turbine Technology, Inc. v. Atlas*,
No. 9:01-cv-08288-KAM (S.D.Fl. Sep. 29, 2010) ...................................................................22

*Allende v. Unitech Design, Inc.*,
783 F. Supp. 2d 509 (S.D.N.Y. 2011)..................................................................................3, 7

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany
County Bd. of Elections*,
522 F.3d 182 (2d Cir. 2008).........................................................................................6, 19, 20

*Bank of New York v. Janowick*,
No. 4:03-cv-00020-JHM-ERG (W.D.Ky. Oct. 29, 2003) .................................................23, 24

*Charlestown Cap. Advisors*, LLC v. Acero Junction, Inc.,
No. 18CV4437JGKBCM, 2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021)..............................21

*Clarke v. Frank*,
960 F.2d 1146 (2d Cir. 1992)..................................................................................................7

*Duracell Inc. v. Glob. Imports, Inc.*,
17-MC-185-P1, 2018 WL 5619983 (S.D.N.Y. Aug. 16, 2018) ...............................................7

*Farbotko v. Clinton Cty. of New York*,
433 F.3d 204 (2d Cir. 2005).....................................................................................................19

*Federal Trade Commission v. AMG Services, Inc.*,
2:12-cv-00536-GMN-VCF (D.Nev. Feb. 28, 2018).................................................................24

*Finkel v. Omega Comm'n Servs., Inc.*,
543 F. Supp. 2d 156 (E.D.N.Y. 2008) ......................................................................................6

*Hensley v. Eckart*,
461 U.S. 424, 103 S.Ct. 1933 (1983).........................................................................................7

*Hindman LLC v. Mihaly*,
2021 WL 5362255 (S.D.N.Y. Oct. 22, 2021)..............................................................4, 20, 21

*Hyundai Motor America, Inc. v. Yahala Trading Co.*,
8:19-cv-01413-JVS-DFM (C.D.Cal. Apr. 1, 2020)................................................................24

**Table of Authorities**
(*continued*)

**Page(s)**

*Jet Midwest International Co., Ltd., v. Jet Midwest Group, LLC*,
    No. 18-cv-06019-FJG (W.D.Mo. Mar. 30, 2021)....................................................23

*Lilly v. City of New York*,
    934 F.3d 222 (2d Cir. 2019)...................................................................................19

*Maldonado v. Houstoun*,
    256 F.3d 181 (3d Cir. 2001)...................................................................................13

*Matteo v. Kohl's Dept. Stores, Inc.*,
    No. 09-CV-7830, 2012 WL 5177491 (S.D.N.Y. Oct. 19, 2002)............................13

*Millea v. Metro-North R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011)......................................................................................6

*Miroglio S.P.A. v. Conway Stores, Inc.*,
    629 F. Supp. 2d 307 (S.D.N.Y. 2009)....................................................................19

*New York v. Grand River Enter. Six Nations, Ltd.*,
    No. 14-CV-910A(F), 2021 WL 4958653 (W.D.N.Y. Oct. 26, 2021)....................21

*Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*,
    13-CV-5475, 2018 WL 7291396 (E.D.N.Y. Aug. 24, 2018) ...................................7

*Oleg Cassini, Inc. v. Electrolux Home Prod., Inc.*,
    No. 11 CIV. 1237 LGS JCF, 2013 WL 3871394 (S.D.N.Y. July 26, 2013) ........................2, 4

*Oriska Ins. Co. v. Israel Disc. Bank of New York*,
    6:17-CV-00910, 2019 WL 2929190 (N.D.N.Y. July 8, 2019) ...............................13

*PayPal, Inc. v. PayPay, Inc.*,
    No. CV09 4494 VRW (N.D. Cal. Sept. 7, 2010)......................................................2

*Ritchie v. Gano*,
    756 F. Supp. 2d 581 (S.D.N.Y. 2010)....................................................................13

*Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*,
    277 F. Supp. 2d 323 (S.D.N.Y. 2003)....................................................................13

*Top Jet Enterprises, Ltd. v. Kulowiec*,
    2022 WL 280459, . (S.D.N.Y. Jan. 31, 2022) ....................................................1, 3

*Tucker v. City of New York*,
    704 F. Supp. 2d 347 (S.D.N.Y. 2010)................................................................11, 12

**Table of Authorities**

(*continued*)

**Page(s)**

*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*,
No. 5:14-CV-5262 (W.D.Ark. Mar. 31, 2018) ..................................................22, 23

*Zobmondo Ent., LLC v. Falls Media, LLC*,
No. CV00571-ABC-PLA (C.D. Cal June 26, 2012).................................................2

**Other Authorities**

CPLR 5003.........................................................................................................4

Fed. R. Civ P. 37 ...........................................................................1, 2, 3, 4, 7, 15

## I.   **INTRODUCTION**

This Honorable Court's January 31, 2022 Opinion and Order stated in pertinent part that:

Plaintiff is entitled to recover "the attorney's fees in connection with the motion to compel…Plaintiff

shall submit an application by **February 11, 2022**."[1] (hereinafter, the "Order.")  Instead of a

straightforward application, Plaintiff has improperly filed a 30-page memorandum of law, and

corresponding declaration with exhibits, seeking $916,848.81 for the 1,361 hours billed, since the

inception of this miscellaneous action and not just those related to the motion to compel.

> *Is $916,848.81 a reasonable amount of attorney's fees for making a motion to compel?*

That is the only question before this Court, notwithstanding Plaintiff's 1,700-page

submission.[2] The answer to that question is most definitely "no,".

> *How does Top Jet attempt to get around the clear and unmistakable fact that 1,361 hours and $916,848.81 are not a reasonable number of attorney hours or a reasonable amount of attorney's fees for a motion to compel?*

By deliberately ignoring this Court's Order and Rule 37(a)(5)(a) of the Federal Rules of

Civil Procedure, Top Jet is overreaching to recover more than just the fees related to the underlying

motion to compel. Moreover, in an attempt to justify the ridiculous number of hours billed, and fees

charged, Plaintiffs have filed an over-sized motion, which has forced Kulowiec to incur unnecessary

---

[1] *Top Jet Enterprises, Ltd. v. Kulowiec*, 2022 WL 280459, at *6-7. (S.D.N.Y. Jan. 31, 2022) (the "Order").

[2] Top Jet seeks to mislead this Court by claiming that their motion somehow relates to a 2018 subpoena relating to the ownership of JMG.  *See* Attorney Fee Motion, pp. 2-5.  Besides the simple fact that the 2021 subpoena had absolutely nothing to do with JMG and the 2018 subpoena was not even from Top Jet, Top Jet fails to acknowledge that Mr. Kulowiec did inform Jet Midwest International, the 2018 subpoenaing party, as to the ownership of JMG and, in fact, his confirmation of such ownership was actually attached to that 2018 subpoena.  Thus, all parties involved knew of Mr. Kulowiec's position as to the JMG ownership back in May of 2018.  *See* Declaration of Edward Schnitzer, dated March 14, 2022 ("Schnitzer Dec."), ¶ 15, Ex. 9.

Similarly, Top Jet deceptively suggests that "Kulowiec can seek contribution from his clients."  Attorney Fee Motion, p. 8.  Such a claim is misleading because JMG is in bankruptcy and Skyblueocean is in receivership.  Top Jet already knows these two key facts as Top Jet's counsel represents the JMG Chapter 7 Trustee and sent Kulowiec a letter regarding that bankruptcy and receivership. *See* Schnitzer Dec., ¶ 16, Ex. 10.

expense again.  Plaintiff Top Jet cannot continue to be rewarded for this abusive behavior, and its

unreasonable demand should be denied. [3]

## II.   **ARGUMENT**

### A.   **Plaintiff's Motion for Attorneys' Fees is Improper**

**1.**   This Court Ordered Plaintiff to Submit a Fee Application Not Renew or File a New Motion for Attorneys' Fees

This Court "granted" Top Jet's motion for attorney's fees and ordered Top Jet to "submit an

application for attorney's fees" in connection with the Motion to Compel.  Order, pp. 6-7.  What

Plaintiff's counsel filed was **not a fee application**. Instead, it submitted a 1,700-page motion.

An application and a motion are two different things.  Plaintiff's counsel understands the

difference, having properly submitted brief applications for attorney's fees upon being ordered to do so

in the past.[4] By failing to file a fee application, and instead a motion for attorney's fees, Plaintiff's

counsel seeks to impermissibly "re-argue the merits of the underlying sanctions motion."[5]

---

[3] Mr. Kulowiec is a partner in a small firm, comprised of only three attorneys and no support staff.  The firm was formed in 2007 and operates very leanly.  This is in stark contrast to Pillsbury, a firm with over 700 attorneys, over 20 offices throughout the world, revenues of over $700 million and profits per partner of nearly $2 million (https://www.law.com/law-firm-profile/?id=240&name=Pillsbury-Winthrop-Shaw).  Mr. Kulowiec's firm no longer represents JMG and Skyblueocean.   Like many small businesses, Mr. Kulowiec's firm was significantly hurt by COVID-19 as the pandemic affected its aviation clients and thus its business.  That harm played a role in the response to the subpoena.  When Mr. Kulowiec received it, he did not hire counsel initially as costs were an issue for his small firm.  He tried his best to comply with the subpoena but realized that he made a mistake and should have put more resources into it from the start.  After realizing that mistake, he did hire counsel and put more effort into producing all responsive documents.  Once counsel was hired, his privilege log was corrected, and additional responsive documents were produced.  He even engaged counsel to review the 38,774 documents and produce all 1,650 non-privileged responsive documents.  In other words, Mr. Kulowiec has already paid dearly for his mistake in believing that he, as an individual, could adequately respond to the subpoena.  Now, he is being bullied by a law firm behemoth whose only speed and approach is scorched earth.  That speed and approach is made abundantly clear by Top Jet's Motion for Attorney Fees which seeks over $900,000 in fees in blatant disregard of this Court's Order and Fed. R. Civ P. 37.

[4] *See, e.g., PayPal, Inc. v. PayPay, Inc.*, No. CV09 4494 VRW (N.D. Cal. Sept. 7, 2010); *Zobmondo Ent., LLC v. Falls Media, LLC*, No. CV00571-ABC-PLA (C.D. Cal June 26, 2012).

[5] *Oleg Cassini, Inc. v. Electrolux Home Prod., Inc.*, No. 11 CIV. 1237 LGS JCF, 2013 WL 3871394, at *1 (S.D.N.Y. July 26, 2013) ("A submission concerning calculation of the monetary sanction to which Oleg Cassini is entitled is not the proper vehicle to re-argue the merits of the underlying sanctions motion. ... Therefore, I will not entertain these arguments").

     2.       Plaintiff's Motion Improperly Seeks to Expand the Scope of Allowed Fees

Top Jet previously requested unlimited attorney's fees and such request was denied by this

Court.  In Top Jet's reply brief in support of the motion to compel, <u>Top Jet's</u> <u>proposed order</u> which, in

pertinent part, stated "Plaintiff is entitled to attorneys' fees and costs *relating to and arising from the failure of*

*Kulowiec to comply with the April subpoena, as well as the filing and hearing on the Motion*."  Dkt No. 21-1

(emphasis added).  However, the Court did not enter Top Jet's proposed order as written.  **Instead,**

**this Court entered the Order which limited the fees to those "in connection with the motion to**

**compel."** Order (emphasis added).  Clearly, this Court did not accept Top Jet's invitation to grant

unlimited fees.  As Plaintiff and its counsel violated this Court's Order, its motion is improper.

### B.    <u>Plaintiff Cannot Meet Its Burden In Establishing an Entitlement to $916,848.81 of Attorney's Fees</u>

Plaintiff "bear[s] the burden of documenting the hours reasonably spent by counsel, and the

reasonableness of the hourly rates claimed."[6]  Plaintiff must show that the claimed amount is proper

from two distinct points of view: (1) the number of hours spent on the motion to compel  is reasonable,

and (2) the hourly rates billed by the attorneys that worked on the motion to compel are reasonable with

respect to that task performed.[7] Failure to satisfy both burdens will result in the denial of Plaintiff's

Motion for Attorney Fees.[8]  As Plaintiff cannot satisfy both burdens, the Motion should be denied.

     1.       Only the reasonable fees paid by Plaintiff in connection with the motion to
                compel are recoverable

Plaintiff and counsel begin their argument by selectively stating "'Accordingly, an award of

reasonable expenses and attorney's fees is mandatory under Rule 37(a)(5)(a).' Jan. 31 Order at 12".

Memorandum in Support of Plaintiff's Motion for Attorney's Fees, p. 19.  Of course, what Plaintiff fails

---

[6] *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011).

[7] *Id.*, *citing Healey v. Levitt*, 485 F.3d 63, 71 (2d Cir. 2007).

[8] *Id.*, *citing Hensley v. Eckart*, 461 U.S. 424, 433-434, 103 S.Ct. 1933, 1939-40 (1983).

to quote is the Order's preceding sentence "Plaintiff is entitled to recovery the attorney's fees **in connection with the motion to compel**." Order, p. 6 (emphasis added).

In fact, Plaintiff and counsel repeat the term "mandatory" nine (9) more times in its Motion, but not *even once* mentions that this Court's order limited those fees to those "in connection with the motion to compel."[9] Thus, contrary to Top Jet's multiple and creative attempts to argue otherwise, the attorney's fees awarded are only "in connection with the motion to compel" as that is what this Court ordered. That is also the only fees that Rule 37(a)(5)(a) allows. See Fed. R. Civ. P.  37(a)(5)(a) ("movant's reasonable expenses incurred **in making the motion**, including attorney's fees") (emphasis added).  Plaintiff's misleading conduct should not be countenanced, and its Motion should be denied.[10]

Courts in this Circuit have routinely reduced the amounts claimed in applications for attorney fees by parties who failed to show that the fees that were sought were strictly in connection with the preparation of a motion to compel. In *Hindman LLC v. Mihaly*, this Court reduced the amount the moving party could recover in fees after reviewing the invoices submitted as part of the fee application and finding that only the time expressly devoted to "the motion to compel [....], as opposed to earlier work in the litigation" was recoverable.[11]

---

[9] Squirreled away, on page 23, Plaintiff once states "All of Top Jet's fees resulting from this motion are thus reasonable."  Of course, Plaintiff then goes on to seek over $900,000, even though the vast majority of these fees did not "result" from the motion.

[10] Not only does Plaintiff's counsel Pillsbury seek to mislead this Court regarding what attorney's fees were awarded and are appropriate, Top Jet seeks to grant itself 9% interest on top of the fees, despite this Court awarding no such interest.  Top Jet's cite to the New York CPLR is misplaced and inapplicable, not to mention CPLR 5003 refers to interest from the date of judgment (something that does not exist here), not the date of invoice as Plaintiff's counsel Pillsbury presumes.

[11] *Hindman LLC v. Mihaly*, 2021 WL 5362255, at *3 (S.D.N.Y. Oct. 22, 2021); *see also Oleg Cassini, Inc.*, 2013 WL 3871394, at *2 ("time spent reviewing the untimely production is not recoverable").

In its Motion for Attorney Fees, Plaintiff and its counsel claim 1,361.19 hours of attorney and staff work for a total of $916,848.81.[12]  Plaintiff and its counsel fail to provide any breakdown of those hours in terms of which hours were in connection with the motion to compel, and which were not. Nonetheless, a review of the narratives of the invoices annexed to Plaintiff's motion reveals that only a fraction of that amount actually was in connection with the Motion to Compel.  The time alleged that appears to be in connection with the Motion to Compel is as follows:

> • 7 timekeepers billed a total of 309.65 hours on the motion to compel. The corresponding amounts for those hours amounts to $216,332.90.

> • 7 timekeepers billed a total of 264.74 hours on the reply to Defendants opposition to the motion to compel. The corresponding amounts for those hours amounts to $188,059.40.

> • 5 timekeepers billed a total of 40.2 hours on preparing a sur-reply and preparing for oral argument in connection with the motion.[13] The corresponding amounts for those hours amounts to $31,231.00.

The total hours set forth in the invoices in connection with motion to compel are as much as 614.59 which correspond to $435,623.3.  Thus, before even beginning the analysis as to whether the fees in question are reasonable, it is evident that Plaintiff is claiming more than twice the amount of hours and fees that their counsel actually spent on efforts connected to the motion to compel.

The hours unrelated to the motion include:

> • 68.2 hours of work for the preparation and attendance of the deposition of Mr. Kulowiec for a total of $52,907.05; and

> • 292.70 hours spent reviewing documents for a total of $167,534.00; and

> • 385.7 hours on a variety of non-motion efforts, including drafting subpoenas; drafting letters to Mr. Kulowiec, his counsel and/or the Court; reviewing correspondence from Mr. Kulowiec's counsel; creating search terms; telephone calls with Mr. Kulowiec and/or his counsel; telephone conferences with the Court; internal Pillsbury meetings; communications with Top Jet; advising on Hong Kong law.

---

[12] *See* Declaration Of Carol Lee In Support Of Top Jet Enterprises, Ltd.'s Motion For An Award Of Attorney Fees And Costs [Dkt. No. 043] ("Lee Dec."), p. 6.

[13] This includes $810/hour charge for Mr. Christopher Sant to "play[] the role of Mr. Schnitzer in mock motion practice."  *See* Lee Dec. Ex. 20 [Dkt. No. 043-20], p. 4.

Since the Order only allowed Top Jet to recover the fees incurred in connection with the motion to compel (Order, p. 6), it is *prima facie* that the amount cannot be greater than $435,623.3. However, as will be shown *infra*, even this amount, and the corresponding number of hours, claimed by Plaintiff should be further reduced as neither the number of hours, nor the hourly rates charged by Top Jet's counsel for the work on the motion to compel, are reasonable.

2.      Only Reasonable Fees Are Allowed

This Court has discretion to determine what constitutes "reasonable" attorney's fees.[14]  Both the Supreme Court and Second Circuit "have held that the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"[15] The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."[16] "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged."[17]

a.      Plaintiff's Time and Fee Requests Are Unreasonable

This Court should significantly reduce the fees requested by Top Jet because the amount of time it allegedly expended on the motion to compel is unreasonable.[18]  To determine whether the number of hours spent by counsel on a given task was reasonable, the Court looks to "its own

---

[14] *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

[15] *Id.*

[16] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182, 184, 190 (2d Cir. 2008).

[17] *Finkel v. Omega Comm'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

[18] *See*, generally, Joseph Tiano Declaration, dated March 14, 2022 ("Tiano Dec."), ¶18, Ex. A.

familiarity with the case and its experience with the case and its experience generally."[19]  The Court

should exclude hours that were "excessive, redundant, or otherwise unnecessary" to the litigation.[20]

Further, "billing judgment is an important component in fee setting," and '[h]ours that are not

properly billed to one's client also are not properly billed to one's adversary."[21]  Thus, "where counsel

relies on vague or excessive entries or block billing practices which make it difficult for a court to assess

reasonableness, an across-the-board fee reduction is warranted."[22]  The Court may also reduce a fee

award for "excessive time spent on certain projects."[23]  The Court also "has the authority to make

across-the-board percentage cuts in hours as a practical means of trimming fat from a fee

application."[24]

> (1)   Other Motions to Compel Offer Guidance as to the
>        Reasonable Number of Hours

Top Jet appears to really be claiming more than 500 hours' worth of work in connection with

the motion to compel.[25]  Even this number is outrageously large when compared with what courts have

held as reasonable in similar situations.  The review of twenty decisions issued by Courts in this and

other Circuits between 2009 and 2021 revealed that between 1.6 and 77.5 hours were considered to be a

---

[19] *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

[20] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

[21] *Id.*

[22] *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 13-CV-5475, 2018 WL 7291396, at *7 (E.D.N.Y. Aug. 24, 2018).

[23] *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011).

[24] *Duracell Inc. v. Glob. Imports, Inc.*, 17-MC-185-P1, 2018 WL 5619983, at *10 (S.D.N.Y. Aug. 16, 2018).

[25] As stated *supra*, Top Jet is actually claiming more than twice that amount, but the rest of the hours claimed were spent in tasks that are unrelated with the motion to compel and the replies, therefore recovery of the fees for those hours is automatically excluded pursuant to Fed. R. Civ. P. 37(a)(5)(a) and to the Order issued by the court.

reasonable amount of time for attorneys to prepare a motion to compel, with an average of 25.82 hours.[26]

Kulowiec also retained Legal Decoder, a third-party analytics service to compare Top Jet's counsel's alleged hours against industry standards.[27] After reviewing a data pool of over 150 relevant matters Legal Decoder found that "on average across all legal professional levels, the amount of time spent engaging in all activities related to a Motion to Compel is 147.25 hours".[28]

In sum, a motion to compel should take between 25.82 and 147.25 hours, not over 500. Given the straight-forward facts in this matter, the many prior motions to compel drafted by Plaintiff's counsel (including a motion to compel drafted in a related case earlier in 2021), the actual hours required to draft this motion to compel should have been on the lower side of that range.

(2)     Over Eleven Times the Expected Effort Went into the Motion

Here, the time entries confirm Top Jet attorneys' improper, excessive and redundant billing practices. A team of veteran lawyers essentially wrote the initial motion papers 3 times over. That team included Mr. Flanders, the firm's Managing Partner of the New York Office; Mr. G. Sant, the firm's co-chair of their China Practice and 14th year partner; Ms. Lee, a 10th year Counsel; Ms. Ng, a 9th year Counsel; Ms. Rennagel, a 22nd year Special Counsel; and Y. Yang, a former partner from a Chinese law firm. This team initially spent over *100 hours* working on the motion. In fact, Mr. G. Sant alone billed over 40 hours on this motion.[29]

---

[26] *See* Declaration of Edward Schnitzer, dated March 14, 2022 ("Schnitzer Dec."), ¶17, Ex. 11 – Table Summarizing Decisions.

[27] *See* Tiano Dec., ¶18, Ex. A.

[28] *See* Tiano Dec., ¶18, Ex. A, p. 3.

[29] *See* Schnitzer Dec., ¶ 4.

Yet, despite a team of lawyers already pouring over double the effort one would reasonably expect to draft a complete motion to compel, there was implausibly more to do.  In the second round of drafting, another **40 hours** were spent rewriting that motion to which multiple attorneys had already billed over 100 hours.  For instance, Mr. Sant billed 12.1 hours on 10/20/21 for "extensive revisions to brief and to declaration."

See footnote [30].

Still unsatisfied on October 20th, Mr. Sant added nearly 15 more hours over the next two days

See footnote [31].

Mr. G. Sant wasn't the only attorney or partner among Top Jet's counsel who continued to work on this motion after Mr. G. Sant's "extensive" revisions.  In what could be considered a third round of additional drafting, over **160 more hours** were allegedly worked. From just October 21 and 22, Mr. Flanders billed 10.1 additional hours; Ms. Lee billed 11.7; F. Wang billed 22.6 hours; and Ms. Ng billed an astonishing 27.3 hours.[32]  In fact, Plaintiff's counsel allegedly spent a total of **89 hours** on October 21st and 22nd on the motion.

In total, the memorandum of law, and initial papers, alone allegedly took Plaintiff's counsel over 300 hours!  Again, entire motions to compel more reasonably can be drafted in 25.82 hours on average.

---

[30] *See* Lee Dec., Ex. 19B (pdf page 32) - Pillsbury Invoice No. 8435784, dated November 8, 2021, p. 9.

[31] *See* Lee Dec., Ex. 19B (pdf page 33) - Pillsbury Invoice No. 8435784, dated November 8, 2021, p. 10.

[32] *See* Lee Dec., Ex. 19B (pdf pages 32-33) - Pillsbury Invoice No. 8435784, dated November 8, 2021, pp. 9-10.

(3)      More Alleged Time for the Reply Than What Entire Motions
Need

Similar to the excessive billing on the original motion papers, the 10-page Reply alone allegedly required over 250 hours, many of which from attorneys with more than 10 years of experience.  This was nearly as much as their initial motion papers, and an order of magnitude more than the time one would need to draft the same type of motion in its entirety.

Indicative of the excessive billing is Plaintiff's attorneys combined 71.1 hours billed on just November 23 and 24 on the Reply, which they filed on the 24th.[33]  Importantly, those 71.1 hours were after Mr. G. Sant billed 7 hours between November 21 and 22 on revisions to the Reply:

(4)      Further Examples of Excessive or Improper Billing

Another prime example of the unreasonableness of the bills and/or overbilling is Ms. Ng's October 21st 18.5-hour time entry.

See footnote [35]  The motion to compel was filed on October 22nd at around 10 pm. Thus, in order for Ms. Ng to have spent 18.5 hours on finalizing and filing the motion, Ms. Ng must have begun work no later than 3:30 am, and then worked, without a break, until 10 pm when she filed the motion.

Ms. Ng similarly billed 13.2 hours on November 24th, the date of the filing of their reply brief.

---

[33] *See* Lee Dec., Ex. 19B (pdf pages 45-46) - Pillsbury Invoice No. 8442524, dated December 9, 2021, pp. 8-9.

[34] *See* Lee Dec., Ex. 19B (pdf pages 44-45) - Pillsbury Invoice No. 8442524, dated December 9, 2021, pp. 7-8.

[35] *See* Lee Dec., Ex. 19B (pdf page 33) - Pillsbury Invoice No. 8435784, dated November 8, 2021, p. 10.

See footnote [36].  As the reply brief was filed at 6:08 pm, Ms. Ng must have commenced work at approximately 5 am and worked non-stop until the reply was filed at 6:08 pm.  The 18.5 and 13.2-hour entries are both unreasonable.[37]

Additionally, both these entries by Ms. Ng include time spent attending to the filing the motion and the reply. This Court has found that seeking to charge full attorney rates for "entries that reflect attorneys performing work that can be done by a clerical person or at most a paralegal" including the filing of papers is "indefensible".[38]

Further examples of duplicative or unnecessary billing are set forth in paragraphs 5 and 6 of the Schnitzer Declaration.[39]

(5)     Top Jet's counsel billed for attorneys doing work which should have been performed by more junior attorneys at lower hourly rates

As mentioned *supra*, Top Jet had six senior and sophisticated attorneys all working on a relatively straightforward motion to compel.  The analysis conducted by Legal Decoder shows that "Pillsbury's partner-level legal professionals accounted for nearly 2 times the billings of associate staff on the Motion.  This is the opposite ratio of customary personnel usage in the industry for this type of motion. Pillsbury's staffing mix resulted in senior legal professionals with higher billing rates handling

---

[36] *See* Lee Dec., Ex. 19B (pdf page 46) - Pillsbury Invoice No. 8442524, dated December 9, 2021, p. 9.

[37] Those are not the only instances of unusually large time entries.  Despite there being no emergency, Pillsbury attorneys billed over 10 hours on a day eleven times.  See, e,g,, E. Epstein:  8/10/21 – 13.5 hrs; M. K. Ng:  8/10/21 – 16.5 hrs; G. Sant:  9/27/21 – 12.3 hrs; M. K. Ng:  10/20/21 – 11 hrs; G. Sant:  10/20/21 – 12.1 hrs; F. Wang:  10/21/21 – 14.3 hrs; C. Sant:  11/16/21 – 10.7 hrs; M. K. Ng:  11/18/21 – 10.3 hrs; M. K. Ng:  11/19/21 – 12 hrs; C. Sant:  11/22/21 – 11.74 hrs; M. K. Ng.:  11/24/21 – 13.2 hrs.).

[38] *Tucker v. City of New York*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).

[39] *See* Schnitzer Dec., ¶¶ 5-6.

tasks below their pay grade".[40] Pillsbury billed for senior attorneys performing tasks that are traditionally carried out by junior attorneys or legal staff over three times more than the industry average.[41]

      This issue, referred to as "Skill Set Mismatch-Overqualified" by Legal Decoder, was particularly true for Ms. Ng as bills totaling $186,871.50 (or 84.9% of her total billings) were flagged by the Legal Decoder system indicating that she handled tasks below her seniority level according to industry benchmarks.[42] Similarly, the billings of G. Sant and of C. Sant also were flagged by the Legal Decoder system as including tasks for which they were overqualified.[43] Line-items by G. Sant totaling $154,935.50 (or 66.5% of his total billings) include descriptions of him performing many routine, time-consuming tasks (e.g., reviewing research, "working on" a motion to compel and revising documents) or otherwise non-partner level functions.[44] Line-items by C. Sant totaling $78,197.40 (or 85.1% of his total billings) also involved work for which he was overqualified.[45] The narratives of his bills indicate that his primary work involved "research and drafting" regarding a "Reply in Support of a Motion to Compel against D. Kulowiec," which are tasks typically undertaken by mid-level associates.[46]

---

[40] *See* Tiano Dec., ¶23(a), Ex. A, p. 5Ex..

[41] *See* Tiano Dec., ¶23(b), Ex. A p. 5.Ex..

[42] *Id.* This is in addition to the Legal Decoder flags on Ms. Ng's billings for excessive research (ER) (triggered on entries totaling $62,142.00 which was 28.2% of her total billings) and excessive time (ET) (triggered on entries totaling $52,465.50 which was 23.8% of her total billings). *See* Tiano Dec., ¶18, Ex. 12, p. 5.

[43] *See* Tiano Dec., ¶18, Ex. A, p. 5.

[44] *Id.* This is in addition to the flags on Mr. G. Sant's billings for vague entry (triggered on entries totaling $92,730.00 which was 39.8% of his total billings), repeated task (triggered on entries totaling $71,610.50 which was 30.7% of his total billings), and block billing (triggered on entries totaling $37,785.00 which was 16.2% of his total billings). *See* Tiano Dec., ¶18, Ex. A, p. 5.

[45] *See* Tiano Dec., ¶18, Ex. A, p. 5.

[46] *Id.* This is in addition to the flags on Mr. C. Sant's billings for excessive research (triggered on entries totaling $84,434.40 which was 91.9% of his total billings, repeated task (triggered on entries totaling $71,636.40 which was 78.1% of his total billings, which is six times the industry average of 13.0%), repeated narrative (triggered on entries totaling $48,276.00 which was 52.5% of his total billings), and vague entry (triggered on entries totaling $37,017.00

Plaintiff's counsel needlessly overstaffed this matter and this Court should not require Kulowiec to pay for that overstaffing.[47]

(6)     Pillsbury's Block Billed Entries Should Be Rejected

A review of the billing invoices provided by Plaintiff's counsel reveals a large number of block billing entries and redactions, which make it nearly impossible to identify the amount of time spent on particular tasks. "Courts look unfavorably on block billing and vagueness in billing because imprecise entries limit courts' ability to decipher whether the time expended has been reasonable."[48] Thus, courts in the Second Circuit have reduced attorneys' fees where block-billing "render[ed] it difficult to determine whether, and/or the extent to which, the work done by [the prevailing party's] attorneys [was] duplicative or unnecessary."[49] Courts in this District also reduce fees where parties insufficiently parse out records to clearly state the amount of time spent on recoverable and unrecoverable tasks.[50]

Here, Top Jet's billing invoices contain numerous instances of block billing entries.[51] Specifically, there were over 280 hours that were blockbilled.  That is more than 20% of the total hours sought.  In particular, 74% of E. Epstein's hours were block billed, 45% of Yang Wang's time were block billed and 40% of Ed Flanders' time were block billed.

---

which was 40.3% of his total billings).  In fact, only one of Mr. C. Sant's 32 billing entries did NOT trigger a flag.  *See* Tiano Dec., ¶18, Ex. A, p. 5.

[47] *Maldonado v. Houstoun*, 256 F.3d 181, 185 (3d Cir. 2001) (Third circuit noted its "principal concern [as being] whether the time claimed is reasonable for the services performed, a concern which is accentuated because of the many lawyers involved in behalf of the plaintiffs" and noted that potential fee shifting "should not encourage the utilization of an excess number of lawyers").

[48] *Matteo v. Kohl's Dept. Stores, Inc.*, No. 09-CV-7830, 2012 WL 5177491, *4 (S.D.N.Y. Oct. 19, 2002) (citing *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325–26 (S.D.N.Y. 2003).

[49] *Sea Spray Holdings, Ltd.* , 277 F. Supp. 2d at 326; *see also Oriska Ins. Co. v. Israel Disc. Bank of New York*, 6:17-CV-00910, 2019 WL 2929190, at *7 (N.D.N.Y. July 8, 2019).

[50] *See Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010).

[51] *See, e.g.,* Schnitzer Dec., ¶7.

(7)    Pillsbury's Redactions Make the Entries Indecipherable

Plaintiff counsel's overuse of redactions without any clarification leaves incomplete narratives associated with claimed hours.  As a result, one cannot determine whether the claimed associated hours are supported, or should be reduced, due to the redaction.   For instance, on 9/13/21, G. Sant billed 5.6 hours, but the first part of the corresponding narrative was redacted thus there is no way to determine what portion of that alleged 5.60 relates to the "work on letter to E. Schnitzer regarding search term" and what portion relates to the redacted description:



*See* footnote [52].  Such time could be as little as 0.1, or potentially as great as 5.50, but a determination is unable to be made due to Mr. Sant's block billing.

Similarly, on 9/15/21, F. Wang bills 1.60 hours but Plaintiffs redacts an unknown number of phrases following the first line and thus there is no way to determine how long this "Further review" took:

---

[52] *See* Lee Dec., Ex. 19B (pdf page 7) - Pillsbury Invoice No. 8430108, dated October 7, 2021, p. 6.

*See* footnote [53].  Of course neither the time spent by Mr. Sant on the letter, nor that of F. Wang's review of D. Kulowiec's production on 9/15/21 would constute a recoverable fee regardless of their actual amount as neither is connected with the Plaintiff's motion to compel.

Another example of this flawed practice is from Mr. Ray's 9/20/21 time entry of 2.30 hours:



*See* footnote [54]. In addition to this time entry having nothing to do with the motion to compel and thus not being recoverable under Rule 37 or this Court's order, Mr. Ray fails to indicate what portion of his time related to "work on information about objection …" and thus this Court has no way to judge the reasonableness of such an entry.

        (8)     Mathematical Inconsistencies Also Render Plaintiff's Motion Suspect

There are also entries where the math simply makes no sense.  For instance, on 9/24/21, F. Wang bills 9.40, but yet his revealed time entries clearly add up to more than 9.40.



---

[53] *See* Lee Dec., Ex. 19B (pdf page 9) - Pillsbury Invoice No. 8430108, dated October 7, 2021, p. 8.

[54] *See* Lee Dec., Ex. 19B (pdf page 11) - Pillsbury Invoice No. 8430108, dated October 7, 2021, p. 10.

*See* footnote [55]. Not only this entry is incorrect, but it is also not related to the Motion to Compel and thus should not be reimbursed.

(9)    Time Entries for Other Matters Should Be Rejected

There were multiple entries where Plaintiff and its counsel seek to make Kulowiec responsible for alleged fees having absolutely nothing to do with Kulowiec.  For instance, in the below entries, two Pillsbury partners are working on reviewing and responding to a "letter from SkyBlueOcean/JMG counsel," not a letter to or from Kulowiec.  There's also a reference to a non-existant motion to compel as Top Jet only filed the Motion to Compel on October 22, 2021, more than two months after the offending time entry below.



*See* footnote [56].

Furthermore, Plaintiff's counsel Pillsbury expects Kulowiec to pay for a "memorandum regarding automatic stay issues," despite the Bankruptcy Code automatic stay having nothing to do with the subpoena or the motion to compel.[57]



---

[55] *See* Lee Dec., Ex. 19B (pdf page 15) - Pillsbury Invoice No. 8430108, dated October 7, 2021, p. 14.

[56] *See* Lee Dec., Ex. 19A (pdf page 41) - Pillsbury Invoice No. 8425381, dated September 10, 2021, p. 5.

[57] Pillsbury's attorneys improperly put time entries into this bill and clearly failed to do any sufficient quality control.

*See* footnote [58].

> (10)    Plaintiff Should Not Be Rewarded for Their Counsel
>          Unnecessarily Complicating the Motion

Plaintiff's counsel is a sophisticated firm and certainly no novice when it comes to filing motions to compel.[59] Pillsbury has filed several motions to compel in many litigations across the country. Three of these motions were filed in connection with one or more of Top Jet and/or Jet Midwest International, Inc. (collectively, the "JMG Related Litigations"). Despite Pillsbury's experience with this type of motion, Plaintiff's motion to compel contains unnecessary and redundant recitations of fact. The net result being inflated time billed for the motion.

The legal issues presented in the subject Motion to Compel were nothing novel. In fact, they were raised and litigated in the JMG Related Litigations. The substance of the dispute that gave rise to the Motion to Compel was previously communicated to the Court in no less than 8 letters from Plaintiff's counsel to this Court. However, when it came time to file the Motion to Compel, Plaintiff's counsel elected to reinvent the wheel, rather than work from forms the firm had already prepared, including those for the very same client. Furthermore, they prepared a recitation of asserted facts which has already been presented to the Court (but, billed as if such a recitation was brand new), which had no bearing on the merits and nature of the underlying discovery dispute, resulting in the production of a thirty-one (31) page Motion to Compel containing an unnecessary recitation of history of ongoing litigation to which Kulowiec was not a party.

Particularly informative is the *Motion to Compel Compliance with Subpoena and Suggestions in Support* that was filed by the Pillsbury firm on behalf of Top Jet in District Court in State of Kansas one month

---

[58] *See* Lee Dec., Ex. 19B (pdf pages 11-12) - Pillsbury Invoice No. 8430108, dated October 7, 2021, pp. 10-11.

[59] *See* Schnitzer Dec., ¶9, Ex. 3- Schedule identifying a sampling of Motions to Compel filed by the Pillsbury Firm since March of 2018.

prior to the motion to compel in this case.[60]  By that motion, Plaintiff and its counsel sought to compel

Jet Midwest, Inc. and Skyblueocean to comply with a subpoena (the "JMI/Sky Subpoena") in

connection with the collection of Top Jet's $87 million judgment against JMG and Sky - the very

judgment that serves that the basis for Top Jet's actions against Kulowiec.  Notably, this motion was

only 7 pages with only 2 exhibits (totaling approximately 120 pages) despite it being against the actual

defendants for which Top Jet has an $87 million judgement, compared to the 26 page motion to

compel, with 42 exhibits totaling over 885 pages, that Plaintiff's counsel chose to prepare and file

against Kulowiec.  Kulowiec submits that such effort here was excessive and unreasonable by

comparison.

(11)     The Motion to Compel Should Have Taken Less Time

As it is evident from the entries reproduced above, the billing practice of Top Jet's counsel is

not up to par with what courts require in order to successfully claim fees in a fee application. Narratives

that mix together document review, letters to chambers, requesting extensions of time make it

impossible to determine how much time was actually spent by Plaintiff's attorneys working on the

motion to compel. Additionally, the massive redactions of the narratives renders verifying the

compliance of Top Jet's claim with the Court's order equally impossible. The Court should take notice

of this and, consistently with the practice in this Circuit, deny Top Jet's application for attorney fees or,

at a minimum, substantially reduce the amount of hours that Top Jet can recover.

Given all the numerous issues tied to duplicative and redundant billing, block billing, improper

redactions and, more in general, questionable billing practices, Top Jet's fee application, if granted at all,

should be dramatically reduced from the incredible 1,361.19 hours currently claimed.  As explained in

greated detail, *supra*, section II(B)(2)(a)(1), 25.82 hours is the average number of hours employed by

---

[60] *See* Schnitzer Dec., ¶10, Ex. 4.

other competent attorneys in preparing and submitting motions to compel.  Alternatively, an analysis of over 150 matters involving motions to compel revealed an average of 147.25 hours.[61] Together these figures represent a more reasonable range of hours to draft a motion to compel.

> b.       Plaintiff's Billing Rates Are Unreasonable

> (1)      Pillsbury's billing rates are unreasonable compared to prevailing market rates

In determining the reasonableness of hourly rates billed by attorneys in the context of a fee application, the Second Circuit has instructed that the district court, in "exercising its considerable discretion," must "bear in mind all of the case specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."[62]

"[U]nder established case law, a reasonable hourly rate is the 'prevailing market rate,' i.e., the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[63] "The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested—in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community."[64] However, the court may also consider its "own familiarity with the rates prevailing in the district."[65] Finally, as the Second Circuit instructed, "[i]n determining what rate a paying client would be willing to pay … [the court] should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case

---

[61] *See* Tiano Dec., ¶18, Ex. A, p. 3.

[62] *Arbor Hill*, 522 F.3d at 187; *See also Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019).

[63] *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

[64] *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 315 (S.D.N.Y. 2009) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *601 W. Assocs. LLC v. Kleiser–Walczak Constr. Co.*, No. 03 Civ. 7942(DFE), 2004 WL 1117901, at *3-4 (S.D.N.Y. May 18, 2004)).

[65] *Id*. (citing *Farbotko*, 433 F.3d at 209 (2d Cir. 2005)).

-19-

effectively," and "such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case."[66]

"The prevailing market rates for attorneys" in this District "for fees incurred on discovery motions range from $450 to $600 per hour for partners, and $220 to $400 per hour for associates."[67] Additional examples of rates that were considered reasonable in the New York area are as follows: *Martinez v. City of New York*, in which the court determined that $425 per hour was a reasonable rate for legal work in connection with a discovery motion;[68] *Bravia Cap. Partners, Inc. v. Fike*, which recognized $375 an hour as reasonable for a law firm partner with 15 years of experience who was the principal drafter of the motion to compel;[69] *Wager v. G4S Secure Integration, LLC*, in which the court considered $475 an hour a reasonable hourly rate for work on a motion to compel for an attorney with 12 years of experience and $350 for an attorney with over 5 years of experience.[70]

Here, Pillsbury claims rates between $825 and $1,116 an hour for partners, between $655 and $985 an hour for Counsel and Special Counsel, of $655 for senior associates, and between $330 and $396 for other associates[71]:

All of the rates billed by Plaintiff's counsel are significantly over what the decisions cited above have recognized being the prevailing market rate in the New York area which is approximately $500 for

---

[66] *Arbor Hill*, 522 F.3d at 187.

[67] *Hindman LLC* at *3 (S.D.N.Y. Jan. 3, 2022) *quoting Doe v. Delta Airlines, Inc*., No. 13 Civ. 6287 (PAE), 2015 WL 1840264, at *3 (S.D.N.Y. Apr. 21, 2015).

[68] *Martinez,* 330 F.R.D. at 86.

[69] *Bravia Cap. Partners*, 296 F.R.D. 136, 145 (S.D.N.Y. 2013)

[70] *Wager*, No. 19CV3547 MKVKNF, 2021 WL 4434953, at *7 (S.D.N.Y. Sept. 24, 2021)

[71] *See* Lee Dec. p. 6 ¶ 35.

partners and $350 for associates for work performed in connection with discovery motions and, in particular, with motions to compel.

Top Jet argues that "the rates are especially reasonable given that Kulowiec's client (Sky) has been paying its own attorneys $900/hour to fight Top Jet's efforts to enforce its judgment". Memorandum in Support of Plaintiff's Motion for Attorney's Fees, p. 21. Top Jet's argument is flawed at its core as Top Jet is comparing apples to oranges.

First of all, the motion to compel and the fee application are directed to Kulowiec, and not to his former client. The fees paid by Kulowiec's former client to their attorneys are irrelevant in this context.  Second, Top Jet's argument also fails because drafting a motion to compel the production of documents is not in the same range of complexity as arbitrating a complex transnational corporate matter or resisting the enforcement of the resulting arbitral award. Courts have recognized that "a reasonable rate for a routine task in a simple case may be quite different from a reasonable rate for a complex task in a challenging case, even when performed by the same firm or the same attorney".[72]  As motions to compel are considered of a "relatively simple nature"[73] and only involve "routine discovery concepts,"[74] The rates charged by Top Jet's counsel for the motion to compel should be evaluated by this Court independently from any comparison with the value of the judgment that Top Jet is attempting to enforce, and from whatever hourly rate Kulowiec's former client is paying their attorney for other tasks that are not connected with the motion to compel.

---

[72] *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18CV4437JGKBCM, 2021 WL 1549916, at *2 (S.D.N.Y. Apr. 20, 2021).

[73] *Hindman LLC*, 2022 WL 19752, at *3.

[74] *New York v. Grand River Enter. Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *3 (W.D.N.Y. Oct. 26, 2021) ("Plaintiff's motion to compel also involved what can only be described as routine discovery concepts").

(2)     The Hourly Rates Claimed by Top Jet Should be Reduced

Based on what courts have recognized being the prevailing market rate in the New York for legal work performed on discovery motions and, specifically, motions to compel, Kulowiec respectfully submits that the hourly rates claimed by Pillsbury should be reduced as follows: $500 per hour for G. Sant, E. Epstein, E. Flanders, H. Ray, III, and R. Rennagel; $350 per hour for C. Sant, C. Lee and M. Ng; and $200 per hour for J. Lim, Y. Wang, and F. Wang.

Given Top Jet counsel's practice of duplicative and redundant billing, repeated block billing, improper redactions, together with the fact that Top Jet's counsel charges full attorney rates for clerical work, it is impossible to determine which Pillsbury rate to apply for which task, so Kulowiec submits that a blended rate of $400 an hour is used for the entire number of hours as reduced as detailed *supra*.[75]

(3)     A $900,000 fee request is more in line with litigating an entire case

Further evidence of the unreasonableness of Plaintiff's counsel's fees is the fact that their inflated $900,000 fee request in this case is more in line with attorney's fees they have sought for their work on ***entire cases*** in the past, not a motion to compel.

For example, in *Air Turbine Technology v. Atlas*, Pillsbury sought $1,823,947 for 14,706.25 hours spent litigating breach of contract and breach of confidential relationship causes of action in a case that unfolded over eight years, not a motion to compel that lasted barely 3 months.  Even then, the awarded amount was nearly half, $1,009,185.10 of the sought amount.[76]  Similarly, in *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, Pillsbury requested $1,803,273.10 for 3,099.15 hours spent trying a breach of contract

---

[75] Top Jet claims that it located a joint venture structure chart that Mr. Kulowiec failed to produce (see Motion, p. 17). That is simply false as the chart at issue was produced multiple times.  *See* Schnitzer Dec., ¶12, Ex. 6.  Furthermore, the version Top Jet has attached was improperly manipulated and that is why it shows different words and numbers than the actual pdf file.  *See* Schnitzer Dec., ¶12, Ex. 6a.

[76] *Air Turbine Technology, Inc. v. Atlas*, No. 9:01-cv-08288-KAM (S.D.Fl. Sep. 29, 2010).

case to a jury verdict - far more work than a motion to compel.  Once again, the court significantly reduced the award, only allowing approximately $966,255, a 46% reduction.[77]

In fact, in a related case, the Western District of Missouri granted Pillsbury $2,188,432.40 in fees for two years spent litigating a term loan action and fraudulent transfer action against nine defendants represented by four different law firms in a case that included a temporary restraining order, discovery, depositions, an appeal, and a trial – far different from a motion to compel, a reply brief and a short hearing.[78]

In sum, Pillsbury's request to be paid over $900,000 for over 1,350 hours of alleged work for a simple motion is inappropriate and such request should be denied.

### (4)    Plaintiff's Counsel Has Historically Claimed Unreasonable Fees

This case is not the first time that Plaintiff's counsel has submitted unreasonable attorney fee requests.  Plaintiff's counsel Pillsbury has submitted attorney's fees in the past, and courts have denied and/or significantly reduced them.[79]  More importantly, when Pillsbury's fees have been granted, courts have often granted far less than the amount sought, finding that Pillsbury's rates were excessive or that their billing records revealed wasteful duplication of attorney effort and other non-compensable inefficiencies.[80]

The historical reduction of Plaintiff's counsel's applications for attorney's fees provide useful points of comparison for the improper motion presently before this Court.  In *Bank of New York v. Janowick*, while Pillsbury sought $37,534.29 for 92.45 hours spent on an interpleader action on behalf of

---

[77] *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, No. 5:14-CV-5262 (W.D.Ark. Mar. 31, 2018)

[78] *Jet Midwest International Co., Ltd., v. Jet Midwest Group, LLC*, No. 18-cv-06019-FJG (W.D.Mo. Mar. 30, 2021).

[79] *See* Schnitzer Dec., ¶13, Ex. 7

[80] *See* Schnitzer Dec., ¶14, Ex. 8.

a stakeholder plaintiff class (which involved drafting a class action complaint, a motion for interpleader, and a motion for class certification, plus all the attendant research and internal conferences), the court awarded only $23,113.[81]   In *Federal Trade Commission v. AMG Services, Inc.*, while Pillsbury requested $80,622.50 for 194 hours spent on a motion for contempt, the court awarded only $55,836.[82]   In *Hyundai v. Yahala*, while they requested $58,768 for 152.8 hours spent preparing a motion to strike and/or dismiss four claims, preparing counterclaims, and preparing a motion for attorney's fees, the court awarded only $47,014.40.[83]   These motions required expertise that far exceeds a simple motion to compel, yet courts have reduced the fees awarded in those cases to amounts far below what Pillsbury is seeking in connection in their Motion for Attorney Fees.

## III.   **CONCLUSION**

In its January 31, 2022 Order, this Court has allowed Top Jet to recover reasonable legal fees as result of the motion to compel presented by Top Jet in October of 2021; and directed Top Jet to submit a fee application detailing such legal fees. Order, p. 6.  Instead of complying with that Order, Top Jet is using this event as a pretext to improperly recover all the legal fees that Top Jet incurred since April of 2021. 1,361.19 hours of attorney and staff work for a total of $916,848.81. Pillsbury's claim of $916,848.81 is an unconscionable amount to claim in connection with what should have been a simple motion to compel discovery. In this and neighboring districts, both the number of hours claimed, and the hourly rates charged, by Plaintiff's counsel are glaringly high compared to what is ordinarily recovered in similar contexts.

---

[81] *Bank of New York v. Janowick*, No. 4:03-cv-00020-JHM-ERG (W.D.Ky. Oct. 29, 2003).

[82] *Federal Trade Commission v. AMG Services, Inc.*, 2:12-cv-00536-GMN-VCF (D.Nev. Feb. 28, 2018).

[83] *Hyundai Motor America, Inc. v. Yahala Trading Co.*, 8:19-cv-01413-JVS-DFM (C.D.Cal. Apr. 1, 2020).

The Court should not tolerate Top Jet's brazen attempt to seek a windfall at the expense of Mr. Kulowiec and should deny Plaintiff's fee application in full. However, if the Court elects to grant Top Jet some amount of reasonable fees pursuant to the Order, Mr. Kulowiec respectfully submits that the proper amount of hours of legal work that Top Jet should recover in connection to the motion to compel is in the range of 25.82 to 147.25 hours.  Applying a blended rate of $400 per hour for all attorneys involved, Top Jet's recovery should be limited to a reasonable range between $10,328 to $58,900 in legal fees.

Dated:  March 14, 2022
        New York, New York

                                            Respectfully submitted,

                                            MONTGOMERY McCRACKEN
                                            WALKER & RHOADS, LLP

                                            By: /s/ Edward L. Schnitzer
                                            Edward L. Schnitzer
                                            Timothy Semenoro
                                            437 Madison Avenue
                                            New York, NY 10022
                                            Telephone: 212-551-7781
                                            Facsimile:  212-599-5085
                                            eschnitzer@mmwr.com
                                            tsemenoro@mmwr.com

                                            Counsel for David Kulowiec